UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
CHRIS TERRY,                                                :
:
                Plaintiff,               :
:
     -against-                                                :
:     **COMPLAINT**
THE CITY OF NEW YORK; FRANK RYAN;     :
and JOHN/JANE DOES, Nos. 1-10 (Members :     Index No. 23-CV-5955
of the New York City Department of Correction :
and New York City Health and Hospitals :     **Jury Trial Demanded**
Corporation Correctional Health Services whose :
names are presently unknown to plaintiff), :
:
              Defendants.                :
:
------------------------------------------------------------x

      Plaintiff CHRIS TERRY, by and through his attorney, Robert T. Perry, alleges upon knowledge, information and/or belief as follows:

**PRELIMINARY STATEMENT**

      1.     Chris Terry brings this action under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution against the City of New York ("the City"), Frank Ryan, formerly a police officer employed by the New York City Police Department ("NYPD"), and John/Jane Does, Nos. 1-10, members of the New York City Department of Correction ("DOC") and New York City Health and Hospitals Corporation Correctional Health Services ("CHS") whose names are presently unknown to Mr. Terry.

      2.     On January 3, 2021, defendant Ryan, in his own words, "beat the fucking shit out of" Mr. Terry in making an arrest, causing Mr. Terry to suffer serious physical and other injuries. Prior to January 3, 2021, the City was on notice that defendant Ryan was prone to misconduct, including using excessive force in making arrests, but failed to adequately supervise and

discipline defendant Ryan, thereby, in effect, acting with deliberate indifference to the rights of civilians, including Mr. Terry, to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

3.  Despite having suffered a nondisplaced fracture of the distal phalanx of the third finger on his right (dominant) hand as a result of defendant Ryan's assault, Mr. Terry was never taken to Bellevue Hospital for hand surgery during the approximately 14 months that he was held in custody at Rikers Island Correctional Facility ("Rikers").  In failing to bring Mr. Terry to Bellevue Hospital for hand surgery despite his repeated requests for the surgery, the Doe defendants acted with deliberate indifference to Mr. Terry's serious medical needs.  And in failing to adequately supervise and discipline DOC and CHS staff, despite being on notice that Rikers was in complete chaos, the City acted with deliberate indifference to the rights of DOC detainees, including Mr. Terry, to adequate medical care under the Fourteenth Amendment to the United States Constitution.

4.  Mr. Terry seeks compensatory and punitive damages to the extent permitted by law.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over Mr. Terry's federal law claims brought pursuant to 42 U.S.C. § 1983 under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

6.  Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Terry's claims occurred in this district.

## JURY DEMAND

7.  Mr. Terry demands a trial by jury on each and every claim for which a jury trial is available under Fed. R. Civ. P. 38(b).

2

## PARTIES

8. Plaintiff CHRIS TERRY is a resident of Kings County in the City and State of New York. Mr. Terry is presently incarcerated at Upstate Correctional Facility in Malone, New York.

9. Defendant THE CITY OF NEW YORK (the "City") is, and was at all relevant times, a municipal corporation duly organized and existing under the laws of the State of New York. The City operates the Police Department of the City of New York ("NYPD"), which acts as the City's law enforcement agent and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

10. Defendant Frank Ryan was at all relevant times a duly appointed agent, employee, officer, and servant of the NYPD. On the date of the incident giving rise to the claims here, defendant Ryan was a detective assigned to the NYPD's Intelligence Bureau. Defendant Ryan is being sued in his individual capacity.

11. At all relevant times, defendant Ryan was acting under color of state law in the course and scope of his duties and functions as an agent, employee, officer and servant of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of his lawful functions and duties. At all relevant times, defendant Ryan was acting for and on behalf of the NYPD, with the power and authority vested in him as an agent, employee, officer and servant of the NYPD.

12. All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers and servants of the New York City Department of Correction ("DOC") and the New York Health and Hospitals Corporation

Correctional Health Services ("CHS"). The Doe defendants are being sued in their individual capacity.

13. At all relevant times, the Doe defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers and servants of the DOC and CHS, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties. At all relevant times, the Doe defendants were acting for and on behalf of the DOC and CHS, with the power and authority vested in them as agents, employees, officers and servants of the DOC and CHS.

## STATEMENT OF FACTS

### The January 3, 2011 Incident

14. On January 3, 2021, Mr. Terry was driving his vehicle in the vicinity of 11th Street and 34th Avenue in Queens County when stopped by police officers.

15. As Mr. Terry pulled over to the right side of the road, one police car driven by defendant Ryan pulled up in front of Mr. Terry's vehicle and another police car pulled up behind Mr. Terry's vehicle, thereby, in effect, boxing in Mr. Terry's vehicle.

16. A policer officer exited the police car behind Mr. Terry's vehicle, drew his gun, walked up to Mr. Terry's vehicle and opened the door to the vehicle.

17. Fearing that he was about to be assaulted by a police officer, Mr. Terry closed the door, put his vehicle in reverse, pulled out and drove off.

18. Defendant Ryan drove after Mr. Terry, following Mr. Terry to the intersection of Vernon Boulevard and 44th Road, where Mr. Terry's vehicle crashed into scaffolding and came to a stop.

19. Mr. Terry exited his vehicle and began fleeing on foot.

20. Defendant Ryan exited his police car and ran after Mr. Terry.

21. Defendant Ryan caught up with Mr. Terry in the back of a rental truck lot, where he began assaulting Mr. Terry.

22. Defendant Ryan repeatedly punched and kicked Mr. Terry in the head and about his body.

23. Mr. Terry did not provoke defendant Ryan's assault on him.

24. Mr. Terry offered no physical resistance that would have justified defendant Ryan's assault.

25. Defendant Ryan used more force than was reasonably necessary to take Mr. Terry into custody.

26. Mr. Terry eventually freed himself from defendant Ryan's grasp and starting running away to avoid further assault.

27. After escaping from defendant Ryan, Mr. Terry came to a private home, where he knocked on a window, pleading for the homeowner's help.

28. When the homeowner came to the window, Mr. Terry stated that "the police are trying to kill me."

29. In response to a 911 call made by the homeowner, police officers -- not including defendant Ryan -- came to the location and took Mr. Terry into custody.

30. Later that night, defendant Ryan boasted to fellow police officers that he "beat the fucking shit out of" Mr. Terry.

31. Unbeknownst to defendant Ryan, the boast was recorded by another police officer's body worn camera.

32. None of the fellow police officers present objected to defendant Ryan's boast or even expressed surprise at the boast.

33. As a result of the assault by defendant Ryan on January 3, 2021, Mr. Terry suffered serious physical injuries to his back, right hand, left shoulder and left ankle.

34. More than two years after defendant Ryan assaulted him, Mr. Terry walks with a slight limp; he cannot stand in certain ways; he cannot exercise as he used to; he cannot write with his right (dominant) hand; he cannot lift heavy objects; he cannot raise his left arm straight up; and he has limited range of motion in his back.

35. As a result of the assault by defendant Ryan on January 3, 2021, Mr. Terry suffered emotional distress, mental anguish, shock, fright, apprehension, embarrassment and humiliation.

**Failure to Provide Hand Surgery**

36. That same day, January 3, 2021, following his arrest, Mr. Terry was taken to Mount Sinai Hospital, where he was diagnosed, among other things, as having suffered a nondisplaced fracture of the distal phalanx of the third finger on his right (dominant) hand.

37. The next day, January 4, 2021, following his arraignment in Queens Criminal Court, Mr. Terry was taken to Rikers.

38. Upon his arrival at Rikers, Mr. Terry was examined by CHS staff, which added a referral order to Bellevue Hospital for hand surgery.

39. Mr. Terry remained at Rikers until March 2022, when he was transferred to state custody.

40. During the approximately 14 months that Mr. Terry was in custody at Rikers, he was never taken to Bellevue Hospital for hand surgery despite his repeated requests for the surgery to repair his right third finger.

41. On information and belief, the Doe defendants acted with deliberate indifference to Mr. Terry's serious medical needs in failing to bring him to Bellevue Hospital for hand surgery.

42. As a result of the Doe defendants' failure to bring Mr. Terry to Bellevue Hospital for hand surgery, Mr. Terry remains unable to write with his right (dominant) hand.

43. As a result of the Doe defendants' failure to bring Mr. Terry to Bellevue Hospital for hand surgery, Mr. Terry suffered emotional distress, mental anguish, shock, fright, apprehension, embarrassment and humiliation.

**Monell Allegations -- Excessive Force**

44. The City was on notice prior to January 3, 2021 that defendant Ryan was prone to engage in misconduct against civilians, including, but limited to, using excessive force in making arrests.

45. Prior to January 3, 2021, defendant Ryan had been named as a defendant in at least four lawsuits alleging that he, alone or in conjunction with other NYPD police officers, violated the civil rights of civilians, including by using excessive force in making arrests.

46. These lawsuits included: *Rolanda Walls, et uno v. City of New York, et al.*, 19 Civ. 0337 (E.D.N.Y.) (false arrest, unlawful search); *Naquan Palmer v. City of New York, et al.*, 14 Civ. 6580 (E.D.N.Y.) (unlawful stop and search, false arrest); *Maxwell Stokes v. City of New York, et al.*, 13 Civ. 5721 (E.D.N.Y.) (unlawful stop and search, false arrest, excessive force);

7

and *Levelle Maxey v. City of New York, et al.*, 13 Civ. 0122 (E.D.N.Y.) (false arrest, excessive force).

47. On information and belief, the above lawsuits were all settled with the City agreeing to pay the plaintiff or plaintiffs a sum of money without admitting liability.

48. Prior to January 3, 2021, the Civilian Complaint Review Board also substantiated a complaint filed by a civilian against defendant Ryan for abuse of authority in connection with a stop and frisk.

49. Notwithstanding defendant Ryan's pattern and practice of engaging in misconduct against civilians, the NYPD has only once imposed discipline on defendant Ryan, and only mild discipline -- censure -- at that.

50. On information and belief, the NYPD never conducted a meaningful investigation into defendant Ryan's misconduct against civilians, even though he openly boasted to other NYPD police officers that he used excessive force in making arrests, as in Mr. Terry's case.

51. The City's failure through the NYPD to adequately supervise and discipline defendant Ryan led and/or contributed to the injuries that Mr. Terry suffered on January 3, 2021.

**Monell Allegations -- Deliberate Indifference to Serious Medical Needs**

52. The City was on notice during the period that Mr. Terry was detained at Rikers that DOC detainees, including Mr. Terry, likely would not receive adequate medical care.

53. On information and belief, in 2021 and 2022 DOC staff regularly failed to escort Rikers detainees to vital medical appointments.

54. In August 2021, Dr. Robert Cohen, a member of the New York City Board of Correction ("BOC"), which monitors DOC facilities. reportedly stated that "[e]very person they send to jail is at great risk of harm and death." Jonah E. Bromwich and Jan Ransom, *An*

8

*'Absolute Emergency' at Rikers Island as Violence Increases*, N.Y. Times, Aug. 24, 2021, available at https://www.nytimes.com/2021/08/24/nyregion/rikers-island-emergency-chaos.html.

55. The same month, August 2021, a nurse with CHS, the City agency charged with providing medical care to DOC detainees, petitioned the DOC commissioner and City leadership for help, stating "I have been on Rikers for 19 years and have never seen the violence and complete chaos that I am witnessing now . . . there's always shortages of staff, there's areas not being covered, there's services not being rendered, because there's no officers to carry these duties out. There is no control by DOC of these jails . . . I believe we've come to a point where DOC cannot manage this situation. We have gone past giving DOC a chance. It's just too dangerous . . . this is an SOS, it's an emergency." *City Jails in Crisis*, The Brian Lehrer Show, WNYC, Aug. 12, 2021, available at https://www.wnyc/org/story/the-brian-lehrer-show-2021-08-12.

56. On September 13, 2021, during an emergency tour of DOC facilities, elected officials witnessed chaotic and unsanitary conditions and heard from DOC detainees who had been denied food and medical care for days. Nick Pinto (@macfathom), Twitter (Sept. 13, 2021, 3:01 PM), https://twitter.com/macfathom/status/1437491757315407878 (Video of Press Conference).

57. Nonetheless, the City, through the DOC and CHS, has not taken the necessary steps to end the chaos at Rikers, thereby, in effect, acting with deliberate inference to the serious medical needs of DOC detainees, including Mr. Terry.

58. The City's failure to ensure that DOC detainees received adequate medical care exacerbated the injuries that Mr. Terry suffered on January 3, 2021.

## FIRST CLAIM FOR RELIEF

### Excessive Force Claim Under 42 U.S.C. § 1983
### (Against Defendant Ryan )

59. Mr. Terry realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

60. Defendant Ryan, acting under color of state law, used objectively unreasonable force on Mr. Terry on January 3, 2021, in violation of Mr. Terry's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

61. As a result of the foregoing, Mr. Terry suffered serious physical injuries, emotional distress, and other damages and injuries.

62. The unlawful conduct of defendant Ryan was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

## SECOND CLAIM FOR RELIEF

### Deliberate Indifference to Serious Medical Needs Under 42 U.S.C. § 1983
### (Against the Doe Defendants)

63. Mr. Terry realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64. The Doe defendants, acting in concert and within the scope of their authority, acted with deliberate indifference to Mr. Terry's serious medical needs between January 2021 and March 2022, in violation of Mr. Terry's right as a DOC detainee to adequate medical care under the Fourteenth Amendment to the United States Constitution.

65. As a result of the foregoing, Mr. Terry suffered serious physical injuries, emotional distress, and other damages and injuries.

66. The unlawful conduct of the Doe defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Monell Claim Under 42 U.S.C. § 1983
### (Against the City)

67. Mr. Terry realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

68. In failing to adequately supervise and discipline defendant Ryan, the City acted with deliberate indifference to the rights of civilians, including Mr. Terry, under the Fourth Amendment to be free from unreasonable seizure.

69. The City's failure to adequately supervise and discipline defendant Ryan was a moving force behind the violation of Mr. Terry's Fourth Amendment rights on January 3, 2021, and proximately caused Mr. Terry's injuries.

70. In failing to adequately supervise and discipline DOC and CHS staff, the City acted with deliberate indifference to the rights of DOC detainees, including Mr. Terry, under the Fourteenth Amendment to adequate medical care.

71. The City's failure to adequately supervise and discipline DOC and CHS staff was a moving force behind the violation of Mr. Terry's Fourteenth Amendment rights between January 2021 and March 2022, and proximately caused Mr. Terry's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Terry demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

  (b)  punitive damages against defendant Ryan and the Doe defendants;

  (d)  reasonable attorneys' fees and costs of this litigation; and

  (e)  such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
   August 6, 2023

                Respectfully submitted,

                */s/ Robert T. Perry*
                ROBERT T. PERRY
                rtperry32@gmail.com
                509 12th Street, Suite 2C
                Brooklyn, New York 11215
                (347) 415-5272

                *Counsel for Plaintiff*