UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

CHRIS TERRY,

                       Plaintiff,

        -against-

THE CITY OF NEW YORK; FRANK RYAN;
and JOHN/JANE DOES, Nos. 1-10 (Members
of the New York City Department of Correction
and New York City Health and Hospitals
Corporation Correctional Health Services whose
names are presently unknown to plaintiff),

                       Defendants.

Index No. 23-CV-5955 (NRM)(JRC)

-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street, Suite 2C
Brooklyn, New York 11215
(347) 415-5272
*Counsel for Plaintiff*

Date of Service: May 3, 2024

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      A.    The Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

           1.    Plaintiff's Allegations: Excessive Force Claim . . . . . . . . . . . . . . . . . . . . . . .2

           2.    Plaintiff's Allegations: Municipal Liability Claim . . . . . . . . . . . . . . . . . .3

           3.    Plaintiff's Claims Arising From the January 3, 2021 Incident . . . . . . . . . . .4

      B.    The "General Release". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    I.    THE "GENERAL RELEASE" DOES NOT BAR PLAINTIFF'S
        CLAIMS ARISING FROM THE JANUARY 3, 2011 INCIDENT. . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ali v. City of New York*, No. 20 Civ. 00030 (RRM),
    2021 U.S. Dist. LEXIS 255741 (E.D.N.Y. Sept. 29, 2021) . . . . . . . . . . . . . . . . . . . . . 11-12

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . .6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230 (2d Cir. 2008), *cert. denied*,
    558 U.S. 1019 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Cooper v. City of New York*, No. 14 Civ. 1761 (RJD), 2018 WL 5115565
    (E.D.N.Y. Oct. 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011) . . . . . . . . . . . . .8

*Edwards v. City of New York*, No. 18 Civ. 8282 (JGK), 2020 WL 5503538
    (S.D.N.Y. Sept. 11, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Fischl. v. Armitage*, 128 F.3d 50 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp.2d 521 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . 6-7

*JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . .8

*Krijn v. Pogue Simon Real Estate Co.*, 896 F.2d 687 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . .6

*Mateo v. Carinha*, 799 Fed. App'x 51 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*McKinley v. Crevatas*, No. 20 Civ. 3606 (KPF), 2022 WL 2066195
    (S.D.N.Y. June 8, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir.), *cert. denied*,
    540 U.S. 823 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Peralta v. City of New York*, No. 19 Civ. 7565 (JGK), 2022 WL 17832324
    (S.D.N.Y. Dec. 21, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . .7

*Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp.2d 483 (S.D.N.Y. 2010) . . . . . . . . . . . . . . .12

*Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992). . . . . . . . . . . . . . .9, 10

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . .8

*Tromp v. City of N.Y.*, 465 F. App'x 50 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805
    (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Villager Pond, Inc. v, Town of Darien*, 56 F.3d 375 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . .7

**State Cases**

*Kaloyeros v. Research Fdn. of State Univ. of N.Y.*, 71 Misc.3d 1219(A),
    144 N.Y.S.3d 557 (Table), 2021 WL 1899401 (Sup. Ct. Albany Cnty. May 6, 2021) . . . .12

*Kass v. Kass*, 91 N.Y.2d 554 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**Constitutions and Statutes**

U.S. Const. amend. iv . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

U.S. Const. amend. xiv . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 4

**Rules**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

**Miscellaneous**

22 NY Jur 2d Contracts § 248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

## PRELIMINARY STATEMENT

Plaintiff Chris Terry brings this action under 42 U.S.C. § 1983 ("Section 1983") and the Fourth and Fourteenth Amendments to the United States Constitution against the City of New York ("the City"), Frank Ryan, formerly a police officer employed by the New York City Police Department ("NYPD"), and John/Jane Does, Nos. 1-10, members of the New York City Department of Correction ("DOC") and New York City Health and Hospitals Corporation Correctional Health Services ("CHS") whose names are presently unknown to plaintiff. Plaintiff alleges, among other things, that on January 3, 2021, defendant Ryan used excessive force in arresting plaintiff, later boasting to fellow officers that he "beat the fucking shit out of" plaintiff.

Defendants City and Ryan have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, or, alternatively, for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure, citing a "General Release" signed by plaintiff on June 30, 2021 to settle an unrelated claim filed with the New York City Office of the Comptroller ("Comptroller") in early 2020 arising from a slip-and-fall incident in the Manhattan House of Detention in November 2019. But the "General Release" is ambiguous as to whether it applied to all plaintiff's claims through June 30, 2021, or was limited to the slip-and-fall incident claim; and plaintiff, who reads at a sixth grade level, never intended in signing the "General Release" to release defendants City and Ryan from the claims here. For these reasons, the motion to dismiss should be denied as to plaintiff's Section 1983 claims against defendant Ryan for excessive force and against defendant City for failure to adequately supervise and discipline defendant Ryan.[1]

---

[1] Plaintiff has decided to withdraw his claim against the Doe defendants for deliberate indifference to serious medical needs and his claim against defendant City for failure to adequately supervise and discipline DOC and CHS staff.

## STATEMENT OF FACTS

### A.    The Complaint

#### 1.    Plaintiff's Allegations: Excessive Force Claim

On January 3, 2021, plaintiff was driving his vehicle in the vicinity of 11th Street and 34th Avenue in Queens County when stopped by police officers. Compl. ¶ 14. As plaintiff pulled over to the right side of the road, one police car driven by defendant Ryan pulled up in front of plaintiff's vehicle and another police car pulled up behind plaintiff's vehicle, boxing in plaintiff's vehicle. Compl. ¶ 15. An officer exited the police car behind plaintiff's vehicle, drew his gun, walked up to plaintiff's vehicle and opened the door to the vehicle. Compl. ¶ 16. Fearing that he was about to be assaulted by an officer, plaintiff closed the door, put his vehicle in reverse, pulled out and drove off. Compl. ¶ 17.

Defendant Ryan drove after plaintiff, following plaintiff to Vernon Boulevard and 44th Road, where plaintiff's vehicle crashed into scaffolding and came to a stop. Compl. ¶ 18. Plaintiff exited his vehicle and began fleeing on foot. Compl. ¶ 19. Defendant Ryan exited his police car and ran after plaintiff. Compl. ¶ 20. Defendant Ryan caught up with plaintiff in the back of a rental truck lot, where he began assaulting plaintiff. Compl. ¶ 21. Defendant Ryan repeatedly punched and kicked plaintiff in the head and about his body. Compl. ¶ 22. Plaintiff did not provoke defendant Ryan's assault on him and offered no physical resistance that would have justified the assault. Compl. ¶¶ 23-24. Defendant Ryan used more force than was reasonably necessary to take plaintiff into custody. Compl. ¶ 25. Plaintiff eventually freed himself from defendant Ryan's grasp and ran away to avoid further assault. Compl. ¶ 26.

After escaping from defendant Ryan, plaintiff came to a private home, where he knocked on a window, pleading for help. Compl. ¶ 27. When the homeowner came to the window,

plaintiff stated that "the police are trying to kill me." Compl. ¶ 28. Responding to a 911 call made by the homeowner, officers -- not including defendant Ryan -- came to the location and took plaintiff into custody. Compl. ¶ 29.

Later that night, defendant Ryan boasted to fellow officers that he "beat the fucking shit out of" plaintiff. Compl. ¶ 30. Unbeknownst to defendant Ryan, the boast was recorded by another officer's body worn camera. Compl. ¶ 31. None of the fellow officers present objected to defendant Ryan's boast or even expressed surprise at the boast. Compl. ¶ 32.

As a result of the assault by defendant Ryan on January 3, 2021, plaintiff suffered serious physical injuries to his back, right hand, left shoulder and left ankle. Compl. ¶¶ 33-34. Plaintiff also suffered emotional distress, mental anguish, shock, fright, apprehension, embarrassment and humiliation. Compl. ¶ 35.

2.    **Plaintiff's Allegations: Municipal Liability Claim**

Prior to January 3, 2021, the City was on notice that defendant Ryan was prone to engage in misconduct against civilians, including, but limited to, using excessive force in making arrests. Compl. ¶ 44. Prior to January 3, 2021, defendant Ryan had been named as a defendant in at least four lawsuits alleging that he, alone or in conjunction with other officers, violated the civil rights of civilians, including by using excessive force in making arrests. Compl. ¶¶ 45-46. On information and belief, the lawsuits were all settled, with the City agreeing to play the plaintiff or plaintiffs in those cases a sum of money without admitting liability. Compl. ¶ 47. Prior to January 3, 2021, the Civilian Complaint Review Board also substantiated a complaint filed by a civilian against defendant Ryan for abuse of authority in connection with a stop and frisk. Compl. ¶ 48.

Notwithstanding defendant Ryan's pattern and practice of engaging in misconduct against civilians, the NYPD only once imposed discipline on defendant Ryan, and only mild discipline -- censure -- at that. Compl. ¶ 49. On information and belief, the NYPD never conducted a meaningful investigation into defendant Ryan's misconduct against civilians, even though he openly boasted to other NYPD police officers that he used excessive force in making arrests, as in plaintiff's case. Compl. ¶ 50. The City's failure through the NYPD to adequately supervise and discipline defendant Ryan led and/or contributed to the injuries that plaintiff suffered on January 3, 2021. Compl. ¶ 51.

### 3.    Plaintiff's Claims Arising From the January 3, 2021 Incident

Based on the above factual allegations, plaintiff asserts an excessive force claim against defendant Ryan under Section 1983 and the Fourth Amendment to the United States Constitution (Compl. ¶¶ 59-62) and a municipal liability claim against defendant City under Section 1983 and the Fourth Amendment to the United States Constitution. Compl. ¶¶ 67-69.

### B.    The "General Release"

On November 13, 2019, while detained in the Manhattan House of Detention at 125 White Street in Manhattan, plaintiff slipped and fell on a floor in the bathroom area, suffering physical injuries ("the slip-and-fall incident"). Declaration of Chris Terry ("Terry Decl.") ¶ 2. In about early 2020, an attorney named Matthew Waller represented plaintiff on a notice of claim filed with the Comptroller. Terry Decl. ¶ 3. In mid-to-late June 2021, Mr. Waller sent plaintiff papers to sign to settle his claim in the slip-and-fall incident ("the settlement paperwork"). Terry Decl. ¶ 4. The settlement paperwork included a "General Release" which plaintiff signed on about June 30, 2021 before a notary public. Terry Decl. ¶ 5.

The "General Release" provided as follows in the first paragraph that plaintiff:

as "RELEASOR", in consideration for the payment of $3,500.00, receipt whereof is hereby acknowledged, having received independent legal advice in this matter or having voluntarily, knowingly, and willingly waived the opportunity to seek legal advice, hereby voluntarily, knowingly, and willingly releases and forever discharges the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York, and all other individually named defendants and/or entities represented and/or indemnified by the City of New York, collectively the 'RELEASEES", from any and all liability, claims, or rights of action alleging a violation of civil rights and any and all claims, causes of actions, suits, administrative proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, transactions, occurrences, agreements, promises, damages, variances, trespasses, extents, judgments, executions, and demands known or unknown, at law, in equity, or by administrative regulations, which RELEASOR, his/her heirs, distributes, devisees, legatees, executors, administrators, successors and assignees had, now has or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE. This RELEASE and settlement constitutes complete payment and satisfaction for all damages and injuries, including all claims for costs, expenses, attorney's fees and disbursements. This RELEASE and settlement constitutes complete payment and satisfaction for all damages and injuries, including all claims for costs, expenses, attorney's fees and disbursements.

Declaration of Adam Karp dated April 4, 2024 ("Karp Decl.") filed in support of defendants'

motion to dismiss, Exhibit ("Ex.") A.

The "General Release" also provided in the next paragraph "[i]n further consideration of

the payment set forth above" that:

RELEASOR agrees to indemnify and save harmless RELEASEE for the amount of any and all, liens, claims, litigation, actions, damages, judgments, costs, expenses, and/or compensation whatsoever, presently known or unknown, whether for property damage, bodily injury, indemnification, contribution, or for any other claim of any nature whatsoever, by any person, arising out of the occurrence(s) and/or injury(ies) alleged in the aforementioned claim.

Karp Decl., Ex. A.

Mr. Waller and plaintiff never spoke over the phone or in person about the settlement

paperwork. Terry Decl. ¶ 6. Mr. Waller and plaintiff did not discuss the "General Release."

5

Terry Decl. ¶ 7. Plaintiff's understanding was that the settlement paperwork applied only to his claim in the slip-and-fall incident. Terry Decl. ¶ 8. At no point did Mr. Waller tell plaintiff that the settlement for the claim in the slip-and-fall incident could or would impact plaintiff's unrelated excessive force lawsuit. Terry Decl. ¶ 9. Plaintiff never discussed his claims here with Mr. Waller because in June 2021, plaintiff had not yet decided to pursue those claims. Terry Decl. ¶ 10. When plaintiff signed the release to settle the claim in the slip-and-fall incident, he did not intend to release his claims here. Terry Decl. ¶ 11. Plaintiff would never have accepted such a low amount ($3,500) to settle both his claim in the slip-and-fall incident and his claims here. Terry Decl. ¶ 12. Because plaintiff had no idea that the settlement of his claim in the slip-and-fall incident would have an impact on his claims here, he did not mention the settlement to Robert Perry, when plaintiff retained Mr. Perry to represent plaintiff in this case in September 2022. Terry Decl. ¶ 13.

Plaintiff never graduated from high school. Terry Decl. ¶ 14. Plaintiff basically dropped out of school in the fourth grade. Terry Decl. ¶ 15. As his prison educational records show, plaintiff reads at a 6.8 level, that is, a sixth grade, eight months level. Terry Decl. ¶ 16 & Ex. A. Plaintiff can read simple books, preferably with pictures. Terry Decl. ¶ 17. Plaintiff does not understand complicated writings such as the "General Release" that he signed in June 2021 to settle his claim in the slip-and-fall incident. Terry Decl. ¶ 18.

### STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are accepted as true, *Krijn v. Pogue Simon Real Estate Co.*, 896 F.2d 687, 688 (2d Cir. 1990), and all inferences are drawn in favor of the plaintiff. *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "'The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims.'" *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp.2d 521, 534 (S.D.N.Y. 2002) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Summary judgment should be granted only if the court determines that there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment as a matter of law. Fed. R. Civ. P. 56(e). The court must examine the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all factual inferences in the non-moving party's favor. *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). The burden is on the moving party to show that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citations omitted). "Only in the rarest of cases may summary judgment be

granted against a plaintiff who has not been afforded the opportunity to conduct discovery."

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir.) (internal quotation marks

and citation omitted), *cert. denied*, 540 U.S. 823 (2003).

**ARGUMENT**

I

**THE "GENERAL RELEASE" DOES NOT BAR PLAINTIFF'S CLAIMS ARISING
FROM THE JANUARY 3, 2021 INCIDENT**

"It is well established that settlement agreements are contracts and must therefore be

construed according to general principles of contract law." *Tromp v. City of N.Y.*, 465 F. App'x

50, 51 (2d Cir. 2012) (summary order) (internal quotation marks and citation omitted). "Under

New York law, . . . the initial matter of whether a written contract is ambiguous is a question of

law." *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011)

(citations omitted). "[T]he presence or absence of ambiguity is determined by looking within the

four corners of the document, without reference to extrinsic evidence." *Chapman v. N.Y. State

Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) (citing *Kass v. Kass*, 91 N.Y.2d 554, 566

(1998)), *cert. denied*, 558 U.S. 1019 (2009). "However, where the contract language creates

ambiguity, extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel

Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009). Contract language is ambiguous if "a

reasonably intelligent person viewing the contract objectively could interpret the language in

more than one way." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

Looking within the four corners of the "General Release," it is clear that there is an

ambiguity as to whether the release bars all claims that plaintiff had or may have through June

30, 2021, the date that he signed the release, or only claims arising out of the slip-and-fall

incident. While the first paragraph states that "RELEASOR," in consideration for the payment

8

of $3,500.00, releases RELEASEES from any and all claims "for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE," the next paragraph states that RELEASOR agrees to "indemnify and save harmless" RELEASEE for any and all claims "of any nature whatsoever, by any person, arising out of the occurrence(s) and/or injury(ies) alleged in the aforementioned claim." In short, the "General Release" contains two provisions -- in adjacent paragraphs -- which conflict, the "release" provision covering all claims "through the date of this RELEASE", and the "save harmless" provision limited to claims "arising out of the occurrence(s) and/or injury(ies) alleged in the aforementioned claim."

This case thus presents a situation like that in *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992). Seiden had entered into a contract with ANC Holdings, Inc.'s ("ANC") predecessor Triangle to recruit a chief executive officer ("CEO") for Triangle's container business, American National Can Company ("National Can"). *Id.* at 426. The contract provided both that Seiden's fee "will be equivalent to 30% (thirty percent) of the executive's first year's earned base and incentive compensation" (the earned compensation provision) and that "[t]he final fee will be determined 12 months from the date of employ" (the final fee provision). *Id.* at 426-27. National Can not only paid Sick, the CEO hired through Seiden's recruitment efforts, $1,023,331.17 in total earnings in 1988, Sick's first year with National Can, but also on March 1, 1989, granted Sick a $1,000,000 discretionary bonus for services performed during 1988. *Id.* at 427. Even though the discretionary bonus was part of Sick's 1988 compensation and thus covered by the earned compensation provision, ANC and National Can refused to include the bonus in calculating Seiden's compensation, citing the final fee provision, which required that fee to be determined "12 months from the date of [Sick's] employ," that is, by

9

December 31, 1988. *Id.* Seiden sued for breach of contract. *Id.* The district court granted

summary judgment for ANC and National Can. *Id.* The Second Circuit reversed. *Id.* at 428.

The Second Circuit first acknowledged the conflict between the earned compensation

provision and the final fee provision as applied to the facts of the case: "We see two possible

readings -- each of which denigrates the plain meaning of the other: either the discretionary

bonus -- though indisputably earned by Sick during 1988 -- is not considered when calculating

the recruiting fee, or the recruiting fee is not finally determined as of December 31, 1988." *Id.* at

429. The Second Circuit next observed that: "[t]he fact that each provision when read separately

may be unambiguous does not necessarily mean that when read together they will be." *Id.* The

Second Circuit further noted: "No principled reason supports a conclusion that the final fee

phrase is more crucial to a reading of the contract than the earned compensation language." *Id.*

The Second Circuit concluded that the contract was ambiguous: "How the contracting parties

intended the two phrases to interrelate is not evident from examining only their language. Thus,

their relationship to one another is not clear." *Id.* at 430.

Similarly here, there are two possible readings of the conflicting provisions in the

"General Release," each of which denigrates the plain meaning of the other. Reading the

"release" provision literally, the "save harmless" provision becomes superfluous, because by

agreeing to release the City, its employees and agents from all claims through the date of the

"General Release," plaintiff necessarily agreed to hold the City, its employees and agents

harmless from damages arising from all such claims and not simply from claims "arising out of

the occurrence(s) and/or injury(ies) alleged in the aforementioned claim." Alternatively, reading

the "save harmless" provision literally, the City, its employees and agents are indemnified only

from damages for claims "arising out of the occurrence(s) and/or injury(ies) alleged in the

aforementioned claim," that is, the slip-and-fall incident claim, leaving the City, its employees and agents subject to potential damages for other claims that "any person," including plaintiff, may have through the date of the "General Release." There is no principled reason supporting a conclusion that the "release" provision is more crucial than the "save harmless" provision to a reading of the "General Release." How the contracting parties intended the two provisions to interrelate is not evident from examining only the language in the "General Release." The "General Release" is thus ambiguous.

Where, as here, there is language such as "the aforementioned claim" suggesting that a release is limited to certain claims, courts in this district have found that release to be ambiguous. *See, e.g., Edwards v. City of New York*, No. 18 Civ. 8282 (JGK), 2020 WL 5503538, at *1, 3-5 (S.D.N.Y. Sept. 11, 2020) (finding General Release ambiguous where it included the language "for, upon, or by reason of any above-stated matter, cause, or thing that occurred through the date of this RELEASE . . ."); *McKinley v. Crevatas*, No. 20 Civ. 3606 (KPF), 2022 WL 2066195, at *2, 6 (S.D.N.Y. June 8, 2022) (finding General Release ambiguous where it covered "any above-stated matter, cause or thing whatsoever that occurred through the date of this RELEASE[.]"); *Peralta v. City of New York*, No. 19 Civ. 7565 (JGK), 2022 WL 17832324, at *1-2, 4-5 (S.D.N.Y. Dec. 21, 2022) (finding two General Releases ambiguous where they covered "any above-stated matter, cause or thing whatsoever that occurred through the date of this RELEASE . . .").

The cases on which defendants rely (Defts. Mem. at 7-9) are factually inapposite. There was no "save harmless" provision in the General Release litigated in *Mateo v. Carinha*, 799 Fed. App'x 51 (2d Cir. 2020) (summary order), let alone a "save harmless" provision comparable to that in the "General Release" here. *See Mateo v. Cahinha*, Case No. 1901078, Doc. 21, Pages 62-63 (JA057-JA058). Nor did the courts in *Ali v. City of New York*, No. 20 Civ. 00030 (RRM),

2021 U.S. Dist. LEXIS 255741 (E.D.N.Y. Sept. 29, 2021), or *Cooper v. City of New York*, No. 14 Civ. 1761 (RJD), 2018 WL 5115565 (E.D.N.Y. Oct. 11, 2018), mention, let alone address, any such "safe harmless" provision.

Defendants assert that the "save harmless" provision in the "General Release" concerns only plaintiff's promise to indemnify the City for <u>future</u> costs arising out of the slip-and-fall incident. Defts. Mem. at 9. But the word "future" does not appear in that provision. Instead, literally read, the "save harmless" provision obligates RELEASOR to indemnify and save harmless RELEASEE for the amount of any costs "presently known or unknown" arising from claims in the slip-and-fall incident. Moreover, the "release" provision in the "General Release" already implicitly includes plaintiff's promise to indemnify the City for future costs arising out of the slip-and-fall incident.

Given the ambiguity in the "General Release," the court may look to extrinsic evidence to determine whether there exists a genuine dispute of material fact as to whether the "General Release" covers the claims here. *McKinley*, 2022 WL 2066195, at *6 (citing *Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp.2d 483, 486 (S.D.N.Y. 2010) ("Where a contract is ambiguous, the parties may present extrinsic evidence regarding their actual intent.")). As plaintiff states in his declaration, he never intended, in signing the "General Release" to settle his claim in the slip-and-fall incident, to release defendants City and Ryan from his claims here, and he would never have accepted such a low amount ($3,500.00) to settle <u>both</u> his claim in the slip-and-fall incident <u>and</u> his claims here. Terry Decl. ¶¶ 11-12.

True, the "General Release" states that plaintiff received "independent legal advice in this matter" and "has read the foregoing and fully understands it." Defts. Mem. at 10. But those recitals do not conclusively establish that plaintiff understood the "General Release" to bar his

claims here. *Cf. Kaloyeros v. Research Fdn. of State Univ. of N.Y.*, 71 Misc.3d 1219(A), 144

N.Y.S.3d 557 (Table), 2021 WL 1899401, at *11 (Sup. Ct. Albany Cnty. May 6, 2021) ("[T]he

Foundation's reliance on the TMA's recitals is misplaced, as recitals 'ordinarily form no part of

the real contract.'" (quoting 22 NY Jur 2d Contracts § 248)). As plaintiff states in his

declaration, he and Mr. Waller never spoke about the settlement paperwork, never discussed the

"General Release," and never, in particular, discussed the claims here -- claims that plaintiff had

not yet decided to pursue in June 2021. Terry Decl. ¶¶ 6-7, 10.

It is also relevant in that regard that the recitals in the "General Release" are clearly

wrong in at least one other critical respect: whereas the "General Release," signed by plaintiff on

June 30, 2021, states that "receipt" of the $3,500 payment from the Comptroller "is hereby

acknowledged" (Karp Decl., Ex. A), Mr. Waller's letter to the Comptroller dated July 6, 2021,

enclosing the executed settlement paperwork, asks the Comptroller to: "Kindly forward your

draft of $3,500.00 payable to CHRIS TERRY and the Law Office of Matthew B, Waller as his

attorney." Karp Decl., Ex. C. In other words, although the "General Release" recites that

plaintiff had received the $3,500 payment from the Comptroller at the time of execution of the

"General Release," no such payment had, in fact, yet been made. To the extent that plaintiff's

receipt of the $3,500 payment was an essential prerequisite to his execution of the "General

Release," that further casts doubt on the "General Release" as a bar to plaintiff's claims here.

## CONCLUSION

Because the "General Release" is ambiguous as to whether it applied to all of plaintiff's

claims through June 30, 2021, or was limited to the slip-and-fall incident claim, and because

plaintiff, who reads at a sixth grade level, never intended in signing the "General Release" to

release defendants City and Ryan from the claims here, the motion to dismiss should be denied

as to plaintiff's claims arising from the January 3, 2021 incident.[2]

Dated: Brooklyn, New York
      May 3, 2024

Respectfully submitted,

*Robert T. Perry*

ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street, Suite 2C
Brooklyn, New York 11215
(347) 415-5272
*Counsel for Plaintiff*

cc:     Thomas Lai (via First Class Mail)
        Senior Counsel
        Special Federal Litigation Division
        New York City Department of Law
        100 Church Street
        New York, New York 10007-2601
        *Attorney for Defendants, The City of New York*
            *and Ryan*

---

[2] Because defendants' sole argument to dismiss plaintiff's municipal liability claim against defendant City arising from the January 3, 2021 incident rests on the "General Release" (Defts. Mem. at 13), and because plaintiff has decided to withdraw his claims against Doe defendants for deliberate indifference to serious medical needs and against defendant City for failure to adequately supervise and discipline DOC and CHS staff, plaintiff does not address the arguments made by defendants in Points II and III of their memorandum of law.