UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                 :

CHRIS TERRY,                           :
                                 :

             Plaintiff,          :

                                 :

        -against-           :

                                 :

THE CITY OF NEW YORK; FRANK RYAN:     :     Index No. 23-CV-5955 (NRM)(JRC)
and JOHN/JANE DOES, Nos. 1-10 (Members   :
of the New York City Department of Correction  :
and New York City Health and Hospitals     :
Corporation Correctional Health Services whose :
names are presently unknown to plaintiff),     :

                                 :

            Defendants.       :

                                 :
-------------------------------------------------------------x


**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT**


ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street, Suite 2C
Brooklyn, New York 11215
(347) 415-5272
*Counsel for Plaintiff*

Date of Service: June 20, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUPPLEMENTAL STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

I.     THE MULTI-FACTOR TEST FOR DETERMINING WHETHER A
PLAINTIFF, IN EXECUTING A RELEASE, KNOWINGLY AND
VOLUNTARILY WAIVED RIGHTS UNDER FEDERAL
EMPLOYMENT DISCRIMINATION LAWS SHOULD BE
APPLIED HERE TO DETERMINE WHETHER PLAINTIFF'S
WAIVER WAS KNOWING AND VOLUNTARY. . . . . . . . . . . . . . . . . . . . . . . . . .4

     A.     The Multi-Factor Test for Determining Whether a Plaintiff
Knowingly and Voluntarily Waived Rights Under Federal
Employment Discrimination Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

     B.     The Multi-Factor Test Should Apply to Determine Whether a
Plaintiff, In Executing a Release, Knowingly and Voluntarily
Waived Constitutional Claims Raised Through 42 U.S.C. §1983. . . . . . . . 6

     C.     Applying the Multi-Factor Test Here, There Is a Genuine Issue of
Material Fact as to Whether or Not Plaintiff Knowingly and Voluntarily
Waived His Constitutional Claim Raised Through 42 U.S.C. §1983. . . . . .8

          1.     Plaintiff's Education and Business Experience. . . . . . . . . . . . . . .8

          2.     The Amount of Time That Plaintiff Had Possession of the
Agreement Before Signing It. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          3.     The Role of Plaintiff in Deciding the Terms of the
Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

          4.     The Clarity of the Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          5.     Whether Plaintiff Was Represented by or Consulted
With an Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6.      Whether the Consideration Given in Exchange for the Waiver Exceeds Benefits to Which the Plaintiff Was Already Entitled to by Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

7.      Whether Plaintiff Had a Fair Opportunity to Consult an Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

8.      Other Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

9.      The Totality of the Circumstances. . . . . . . . . . . . . . . . . . . . . . . . .13

II.    PLAINTIFF'S EDUCATIONAL LEVEL, LITERACY LEVEL AND HIS RELATIONSHIP AND INTERACTIONS WITH COUNSEL WHEN CONSIDERING THE "GENERAL RELEASE" ALL MILITATE AGAINST A FINDING THAT PLAINTIFF'S WAIVER WAS KNOWING AND VOLUNTARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    A.    Plaintiff's Education Level and Literacy Level Militate Against a Finding That His Waiver Was Knowing and Voluntary. . . . . . . . . . . . . . .14

    B.    Plaintiff's Relationship and Interactions with Counsel Militate Against a Finding That His Waiver Was Knowing and Voluntary . . . . . . .16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Bachiller v. Turn On Products, Inc.*, No. 00 Civ. 8701, 2003 WL 1878416
(S.D.N.Y. Apr. 14, 2003), *aff'd*, 86 Fed. App'x. 465 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . .9

*Bormann v. AT&T Communications, Inc.*, 875 F.2d 399 (2d Cir.), *cert. denied*,
493 U.S. 924 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7, 13, 14

*Campbell v. Alliance Nat'l, Inc.*, 107 F. Supp.2d 234 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . .14

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448 (3rd Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Coventry v. United States Steel Corp.*, 856 F.2d 514 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . .5, 6-7

*Dakheem Miller v. City of New York*, No. 21 Civ. 02616, Transcript of Proceedings
Before the Honorable Jennifer E. Willis, United States Magistrate Judge
(Sept. 26, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Drees v. County of Suffolk*, No. 06-CV-3298, 2009 WL 8755530 (E.D.N.Y.
Mar. 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13, 16

*EEOC v. American Ex. Pub. Corp.*, 681 F. Supp. 216 (S.D.N.Y. 1988). . . . . . . . . . . . . . . . 5, 9, 10

*Felder v. Casey*, 487 U.S. 131 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Glugover v. Coca-Cola Bottling Co. of N.Y., Inc.*, No. 91 Civ. 6331, 1993 WL 312269
(S.D.N.Y. Aug. 12, 1993), *aff'd*, 60 F.3d 810 (2d Cir. 1995) . . . . . . . . . . . . 8-9, 11, 13, 14

*Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . 6

*Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360
(2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 12, 13

*Mandavia v. Columbia Univ.*, 912 F. Supp.2d 119 (S.D.N.Y. 2012), *aff'd*,
556 Fed. App'x. 56 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 9-10, 10, 11

*McCann v. Coughlin*, 698 F.2d 112 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 165, 2007 WL 980429 (S.D.N.Y.
Apr. 3, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 11, 13-14

*Phelps v. Geico Indemnity Co.*, No. 6:12-CV-1585, 2015 WL 1447024 (N.D.N.Y.
Mar. 30, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Pucilowski v. Spotify USA, Inc.*, No. 21 Civ. 1653, 2022 WL 836797 (S.D.N.Y. Mar. 21, 2022), *aff'd*, 2022 WL 16842926 (2d Cir. Nov. 10, 2022). . . . . . . . . . . . . . . . . .6

*Wyatt v. Cole*, 504 U.S. 158 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zveiter v. Brazilian Nat'l. Superintendency of Merchant Marine*, 833 F. Supp. 1089 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992). . . . . . . . . . . . . . . . .11

*Tung v. Texaco Inc.*, 150 F.3d 206 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**State Cases**

*Cahill v. Regan*, 5 N.Y.2d 292 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Chiappone v. North Shore Univ. Hosp.*, 164 A.D.3d 463 (2d Dept. 2018) . . . . . . . . . . . . . . 17, 18

*Clemente Bros. Contracting Corp. v. Hafner-Milazzo*, 23 N.Y.3d 277 (2014). . . . . . . . . . . . 15-16

*D & W Central Station Alarm Co. v. Yep*, 126 Misc.2d 37 (Civ. Ct. Queens Cnty. 1984) . . . . . . .15

*Frostfresh Corp. v. Reynoso*, 52 Misc.2d 26 (Dist. Ct. Nassau Cnty. 1966), *aff'd in part and rev'd in part*, 54 Misc.2d 119 (2d Dept. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mangini v. McClurg*, 24 N.Y.2d 556 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Prestia v. Apfel*, 41 A.D.3d 520 (2d Dept. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*State v. Avco Financial Serv. of N.Y., Inc.*, 50 N.Y.2d 383 (1980) . . . . . . . . . . . . . . . . . . . . . . . 15

**Constitutions and Statutes**

U.S. Const. amend. iv . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. . . . . . . . . . . . . . . . . . . . . . . . .4

Older Workers Benefits Protection Act, 29 U.S.C. § 626(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* . . . . . . . . . . . . . . . . . . . . 6

Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 8, 12, 13, 14, 16, 19, 20

iv

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* . . . . . . . . . . . . . . . . . . . . 6

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . .6

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

## PRELIMINARY STATEMENT

Plaintiff Chris Terry submits this memorandum of law in response to the Court's March 22, 2025 order requesting supplemental briefing on: (1) how, if at all, elements of the multi-factor test applied in the context of federal employment discrimination cases for determining whether releases were knowingly and voluntarily entered apply in the context of releases implicating future claims of a constitutional dimension like the claims that plaintiff raises here through 42 U.S.C. § 1983; and (2) how plaintiff's education level, literacy level and his relationship and interactions with counsel when considering the general release may or may not implicate the validity of the general release that he signed.

Plaintiff brings this action against defendants, The City of New York ("City") and Frank Ryan, formerly a City police officer, alleging that on January 3, 2021, defendant Ryan used excessive force on plaintiff, later boasting to fellow officers that he "beat the fucking shit out of" plaintiff. Complaint ("Compl.") at ¶¶ 2, 14-35. Plaintiff asserts a claim against defendant Ryan under 42 U.S.C. § 1983 ("Section 1983") for excessive force, in violation of plaintiff's right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure ("plaintiff's Section 1983 claim"). Compl. at ¶¶ 59-63.

Defendants have moved to dismiss plaintiff's Section 1983 claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for failure to state a claim upon which relief can be granted, citing a "General Release" signed by plaintiff on June 30, 2021 to settle an unrelated claim filed on plaintiff's behalf by Matthew Waller, Esq., with the New York City Office of the Comptroller ("Comptroller") in early 2020 arising from a slip-and-fall incident in the Manhattan House of Detention in November 2019 ("plaintiff's slip-and-fall-incident claim").

In its March 22, 2025 order, the Court denied defendants' motion to dismiss without prejudice, stating that the Court was inclined to convert the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56. The Court gave the parties an opportunity to introduce additional factual materials directly related to the issues on which it requested supplemental briefing. On June 5, 2025, plaintiff submitted the Declaration of Matthew Waller ("Waller Decl.") and the Supplemental Declaration of Chris Terry ("Terry Supp. Decl.").

As shown in Point I below, the multi-factor "totality of the circumstances" test adopted by the Second Circuit in 1989 for determining whether a plaintiff, in executing a release, knowingly and voluntarily waived rights under federal employment discrimination laws should be applied here to determine whether plaintiff, in executing the "General Release" to settle his slip-and-fall-incident claim, knowingly and voluntarily waived his Section 1983 claim; and applying that multi-factor test here, it is clear that there is a genuine issue of material fact as to whether or not plaintiff's waiver was knowing and voluntary.

As shown in Point II below, plaintiff's education level, literacy level and his relationship and interactions with Mr. Waller when considering the "General Release" are all relevant factors, not only under the multi-factor "totality of the circumstances" test but also under New York contract of law principles, and these factors militate against a finding that plaintiff, in executing the "General Release," knowingly and voluntarily waived his Section 1983 claim.

## SUPPLEMENTAL STATEMENT OF FACTS

Mr. Waller and plaintiff disagree as to whether they discussed the effects of signing the "General Release." Mr. Waller states that he and plaintiff had such discussions; that in settling an earlier claim for plaintiff with the Comptroller, he had negotiated a carve out of plaintiff's other matters; and that it is his custom and practice always to discuss the effects of signing the

City's "General Release." Waller Decl. ¶¶ 3-5. Plaintiff states that in early January 2021, he was re-arrested and sent back to Rikers Island Correctional Facility ("Rikers"); that in about late February 2021, he received a letter from Mr. Waller stating that the Comptroller had offered to settle his slip-and-fall-incident claim; that he may have spoken with Mr. Waller once briefly over the phone from Rikers about the settlement but does not recall any discussion of a "General Release"; and that because this was still "Covid time" at Rikers, Mr. Waller understandably never came to Rikers to see plaintiff. Terry Supp. Decl. ¶¶ 8-12.

Plaintiff further states that in late June 2021, he received the settlement paperwork from Mr. Waller with a letter asking him to sign and return the papers to him as soon as possible; that he signed the papers before a notary public and mailed them back to Mr. Waller the same day; that he did not carefully or closely read the settlement papers before signing them; and that he was anxious to get the settlement money as quickly as possible, so that a friend could pay some bills for him, including making partial payment on the retainer fee charged by his new private defense counsel. Terry Supp. Decl. ¶¶ 13-14.

Mr. Waller and plaintiff both agree that they did not discuss plaintiff's Section 1983 claim. Waller Decl. ¶¶ 6-7; Terry Supp. Decl. ¶ 15. Plaintiff states that he did not decide to pursue that claim until August 2022, after he heard defendant Ryan admit, at a pretrial suppression hearing in plaintiff's then pending criminal case, that he used excessive force on ("beat the fucking shit" out of) plaintiff on January 3, 2021. Terry Supp. Decl. ¶¶ 15-16. Plaintiff also states that by August 2022, it was too late to file a notice of claim with the Comptroller for defendant Ryan's use of excessive force against plaintiff on January 3, 2021. Terry Supp. Decl. ¶ 17.

3

Plaintiff reiterates that he basically dropped out of school in the fourth grade. Terry Supp. Decl. ¶ 18. To clarify, plaintiff states that he did attend school sporadically into the 10th grade, when he finally left school for good. Terry Supp. Decl. ¶ 19. As noted in plaintiff's earlier declaration, according to his prison education records, plaintiff reads at a 6.8 level, that is, a sixth grade, eight months level. Declaration of Chris Terry, dated April 25, 2024, ¶ 16 & Exhibit A. Corrections officials at Clinton Correctional Facility ("Clinton") intend to place plaintiff in an educational program at a junior high school level. Terry Supp. Decl. ¶ 20.

The Court may take judicial notice that plaintiff has spent most of his adult life in prison and thus has little business experience. Between April 19, 2011 and January 3, 2019, plaintiff was incarcerated in New York State correctional facilities. *See* Incarcerated Lookup, Chris Terry, DIN: 11A1772, at https://nysdoccslookup.doccs.ny.gov. Plaintiff was re-arrested on January 3, 2021 and has remained incarcerated since then, first at Rikers and later in New York State correctional facilities. Compl. at ¶¶ 36-38. *See also* Incarcerated Lookup, Chris Terry, DIN: 22B1003, at https://nysdoccslookup.doccs.ny.gov.

## ARGUMENT

### I.

**THE MULTI-FACTOR TEST FOR DETERMINING WHETHER A PLAINTIFF, IN EXECUTING A RELEASE, KNOWINGLY AND VOLUNTARILY WAIVED RIGHTS UNDER FEDERAL EMPLOYMENT DISCRIMINATION LAWS SHOULD BE APPLIED HERE TO DETERMINE WHETHER PLAINTIFF'S WAIVER WAS KNOWING AND VOLUNTARY**

A. **The Multi-Factor Test for Determining Whether a Plaintiff Knowingly and Voluntarily Waived Rights Under Federal Employment Discrimination Laws**

In 1989 in *Bormann v. AT&T Communications, Inc.*, 875 F.2d 399 (2d Cir.), *cert. denied*, 493 U.S. 924 (1989), the Second Circuit held that a plaintiff's execution of a release waiving rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), was

permissible, "subject to a close evaluation of various factors that are indicia of a 'knowing' and 'willful' waiver." *Id.* at 402 (quoting *Coventry v. United States Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988)). The Second Circuit in *Bormann* thus followed the Third Circuit in *Coventry* in adopting a multi-factor "'totality of the circumstances'" test to determine whether a plaintiff, in executing a release, knowingly and voluntarily waived rights under the ADEA. *Id.* at 403 (quoting *Coventry*, 856 F.2d at 524).

As did the Third Circuit in *Coventry*, 856 F.3d at 523, the Second Circuit in *Bormann* looked to six factors enumerated by Judge Lasker in *EEOC v. American Ex. Pub. Corp.*, 681 F. Supp. 216 (S.D.N.Y. 1988), for addressing the question:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann*, 875 F.2d at 403 (quoting *EEOC v. American Ex. Pub. Corp.*, 681 F. Supp. at 219). To that "obviously not exhaustive" list, the Second Circuit in *Bormann* added a seventh factor: "whether an employer encourages or discourages an employee to consult an attorney, and whether the employee had a fair opportunity to do so." *Id.* (citing *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 454 (3rd Cir. 1988)). The Second Circuit in *Bormann* further "stress[ed] the need to examine carefully any situation in which an older worker bargains away the statutory right to be free from age discrimination." *Id.*

Since *Bormann*, courts in the Second Circuit have applied the multi-factor "totality of the circumstances" test to determine whether a plaintiff, in executing a release, knowingly and voluntarily waived rights under other federal employment discrimination laws. *See, e.g., Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367-68 (2d Cir. 1991)

(Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*); *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545, 546-47 (S.D.N.Y. 1997) (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*); *Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 165, 2007 WL 980429, at *1-*2 (S.D.N.Y. Apr. 3, 2007) (Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*); *Pucilowski v. Spotify USA, Inc.*, No. 21 Civ. 1653, 2022 WL 836797, at *1,*4 (S.D.N.Y. Mar. 21, 2022), *aff'd*, 2022 WL 16842926 (2d Cir. Nov. 10, 2022) (Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*).[1]

Revisiting the multi-factor "totality of the circumstances" test in 1991, the Second Circuit in *Laniok* "emphasize[d] that any attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature if the inquiry," explaining that: "[t]he essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his rights can be characterized as 'knowing and voluntary.'" 935 F.2d at 1368.

## B.     The Multi-Factor Test Should Apply to Determine Whether a Plaintiff, in Executing a Release, Knowingly and Voluntarily Waived Constitutional Claims Raised Through 42 U.S.C. § 1983

In adopting the multi-factor "totality of circumstances" test to determine whether a plaintiff, in executing a release, knowingly and voluntarily waived rights under the ADEA, the Second Circuit in *Bormann* reasoned that the test was "consistent with the <u>strong</u> congressional purpose underlying the ADEA to eradicate discrimination in employment." 875 F.2d at 403 (underline added). The Third Circuit in *Coventry* had previously reached the same conclusion: "In light of the <u>strong</u> policy concerns to eradicate discrimination in employment, a review of the

---

[1] Although the multi-factor "totality of the circumstances" test originated in *Bormann*, a case involving a release waiving rights under the ADEA, the analysis of waivers of ADEA rights is now governed by statute. *See* Older Workers Benefits Protection Act, 29 U.S.C. § 626(f); *Tung v. Texaco Inc.*, 150 F.3d 206, 208-09 (2d Cir. 1998).

totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary." *Coventry*, 856 F.2d at 522-23 (underline added).

A similar rationale favors extension of the multi-factor "totality of the circumstances" test to determine whether a plaintiff, in executing a release, knowingly and voluntarily waived claims of a constitutional dimension raised through Section 1983. Section 1983's "central purpose" is "to provide compensatory relief to those deprived of their federal rights by state actors." *Felder v. Casey*, 487 U.S. 131, 141 (1988). *See also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). To achieve that purpose, Congress has authorized awards of attorney's fees to prevailing parties in Section 1983 cases -- under 42 U.S.C. § 1988 -- "indicat[ing] a strong Congressional intent to encourage private enforcement of the nation's civil rights statutes . . . ." *McCann v. Coughlin*, 698 F.2d 112, 128 (2d Cir. 1983) (underline added).

Given this strong Congressional intent, there is a "need to carefully examine any situation in which" a plaintiff who has been deprived of federal constitutional rights by state actors "bargains away" the right to seek redress for the deprivation through Section 1983. *Bormann*, 875 F.2d at 403. Applying the multi-factor "totality of the circumstances" test to determine whether the waiver was knowing and voluntary best serves the need for that careful examination. Absent application of the multi-factor "totality of the circumstances" test, a plaintiff may be denied the right to sue under Section 1983, even though he or she did not knowingly and voluntarily waive that right.

**C.    Applying the Multi-Factor Test Here, There Is a Genuine Issue of Material Fact as to Whether or Not Plaintiff Knowingly and Voluntarily Waived His Constitutional Claim Raised Through 42 U.S.C. § 1983**

Applying the multi-factor "totality of the circumstances" test here, there is a genuine issue of material fact whether plaintiff, in executing the "General Release" to settle his slip-and-fall-incident claim, knowingly and voluntarily waived his Section 1983 claim. Indeed, all of the factors under the "totality of the circumstances" test -- and more -- strongly support plaintiff's position that there was no knowing and voluntary waiver.

### 1.    Plaintiff's Education and Business Experience

The first factor -- the plaintiff's education and business experience -- heavily weighs in plaintiff's favor. Plaintiff never graduated from high school and basically dropped out of school in the fourth grade, though he continued to attend school sporadically into the tenth grade, before finally dropping out for good. Moreover, according to his prison education records, plaintiff reads at a sixth-grade level, and Clinton officials intend to place him in an educational program at the junior high school level. Further, because plaintiff has spent most of his adult life in jail or prison, he has little business experience. Plaintiff's status under the first factor is thus closer -- even superior -- to that of plaintiffs in cases where the first factor was found to favor them, *see, e.g., Drees v. County of Suffolk*, No. 06-CV-3298, 2009 WL 8755530, at *3, *6 (E.D.N.Y. Mar. 30, 2009) (although plaintiff had a high school equivalency diploma, taken 12 credits of college level courses, worked for the Suffolk County Police Department for 17 years, and before that worked as a Mental Hygiene Therapy Aide for 12 years at Central Islip Hospital, the court found that the first factor favored her because she lacked business experience) and *Glugover v. Coca-Cola Bottling Co. of N.Y., Inc.*, No. 91 Civ. 6331, 1993 WL 312269, at *9 (S.D.N.Y. Aug. 12, 1993), *aff'd*, 60 F.3d 810 (2d Cir. 1995) ("As for the first factor, although Glugover has some

college education, it is unclear whether she was sophisticated enough in business affairs to understand the terms of the release."), and markedly different from that of plaintiff in cases where the first factor was found to disfavor them. *See, e,g,, Mandavia v. Columbia Univ.*, 912 F. Supp.2d 119, 130 (S.D.N.Y. 2012), *aff'd*, 556 Fed. App'x. 56 (2d Cir. 2014) ("As befits a former Senior Technician in the Columbia University Department of Microbiology & Immunology, Plaintiff has significant education and business experience."); *Bachiller v. Turn On Products, Inc.*, No. 00 Civ. 8701, 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003), *aff'd*, 86 Fed. App'x. 465 (2d Cir. 2004) ("Plaintiff, who has a High School Equivalency Diploma and who at the time her employment was terminated was an accounts payable clerk, was capable of understanding the Release and the Notice.").

### 2. The Amount of Time That Plaintiff Had Possession of the Agreement Before Signing It

The second factor -- the amount of time that plaintiff had possession of and access to the agreement before signing it -- also heavily weighs in plaintiff's favor. According to plaintiff, while detained at Rikers, he received the settlement papers from Mr. Waller in the mail, signed them before a notary public, and mailed them back to Mr. Waller the same day, leaving little opportunity for plaintiff to contemplate and reflect on the meaning of the legal terminology in those papers. *Cf. EEOC v. American Ex. Pub. Corp.*, 681 F. Supp. at 220 ("Lahey states that he possessed the agreement for only three days. Three days while not conclusive as to involuntariness, is sufficiently short to create a question on the subject."); *Mandavia*, 912 F. Supp.2d at 130 ("Nonetheless, the claim that Plaintiff could have knowingly and voluntarily signed the Agreement after a mere hour of review sets the bar too low. While the document is only one page and is relatively unambiguous, a decision of this magnitude may easily have

required more than just an hour of reflection and evaluation to support a finding of knowing and voluntary release.").

### 3. The Role of Plaintiff in Deciding the Terms of the Agreement

The third factor -- the role of plaintiff in deciding the terms of the agreement -- likewise heavily favors plaintiff. As is clear from defendant's motion papers (see Declaration of Adam Karp, dated April 4, 2024, at Exhibit A), the Comptroller drafted the terms of the "General Release," which is printed on the Comptroller's letterhead. *Cf. EEOC v. American Ex. Pub. Co.*, 681 F. Supp. at 220 ("Lahey had no role in deciding the terms of the release."). True, in settling an earlier claim for plaintiff, Mr. Waller negotiated a carve out of plaintiff's other matters. But plaintiff insists that he may spoken with Mr. Waller about the settlement of the slip-and-fall-incident claim once briefly over the phone from Rikers and does not recall having any discussion with Mr. Waller in regard to the "General Release." Hence, there is at least a genuine issue of material fact as to whether or not plaintiff had an opportunity to modify the terms of the "General Release." *Cf. Mandavia*, 912 F. Supp.2d at 130 (Given Plaintiff's "contradictory account of his involvement in the negotiations over the Agreement, . . it is not clear form the allegations that Plaintiff played an active role in shaping the terms of the Agreement. The Court finds that this *Bormann* factor counts in Plaintiff's favor.").

### 4. The Clarity of the Agreement

The fourth factor -- the clarity of the agreement -- also heavily favors plaintiff. As plaintiff observed in his memorandum of law in opposition to defendants' motion to dismiss, the "General Release" contains two provisions in adjacent paragraphs which conflict -- the "release" provision covering all claims "through the date of the RELEASE", and the "save harmless" provision limited to claims "arising out of the occurrence(s) and/or injury(ies) alleged in the

aforementioned claim" -- and render the "General Release" ambiguous. "The fact that each provision when read separately may be unambiguous does not necessarily mean that when read together they will be." *Selden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992). "How the contracting parties intended the two [provisions] to interrelate is not evident from examining only their language. Thus, their relationship to one another is not clear." *Id.* at 430. *See* Plaintiff's Memorandum of Law in Opposition to Defendants Motion to Dismiss the Complaint (May 3, 2024), at 8-11. *Cf. Glugover*, 1993 WL 312269, at *10 (finding "some ambiguity" in the terms of the release, raising factual issues as to Glugover's understanding of those terms).

   5.     **Whether Plaintiff Was Represented by or Consulted with an Attorney**

   The fifth factor -- whether plaintiff was represented by or consulted with an attorney -- also heavily favors plaintiff. Because Mr. Waller and plaintiff disagree as to whether they discussed the effects of the "General Release," there is at least a genuine issue of material fact whether such a discussion took place. *Cf. Mandavia*, 912 F. Supp.2d at 131 ("Nonetheless, Plaintiff claims that Batista failed to represent him adequately -- or, worse, actively undermined him. It would be unreasonable to count Batista's guidance against Plaintiff in a case where Plaintiff independently claims that Batista -- as his union representative -- breached a legal duty of fair representation."); *Okoro*, 2007 WL 980429, at *2 ("The Ritz claims that Okoro was represented by the union during the negotiation of the Release, but Okoro disputes the level of union involvement throughout the process . . . . Summary judgment is therefore not appropriate at this early stage of the litigation."). Moreover, both Mr. Waller and plaintiff agree that they never discussed whether the "General Release" would bar plaintiff's Section 1983 claim, because as of June 2021, plaintiff had not yet decided to pursue that claim.

### 6. Whether the Consideration Given in Exchange for the Waiver Exceeds Benefits to Which the Plaintiff Was Already Entitled to by Law

The sixth factor -- whether the consideration given in exchange for the waiver exceeds benefits to which the plaintiff was already entitled as a matter of law -- also heavily favors plaintiff. As plaintiff observed in his declaration in opposition to the motion to dismiss, he "never would have accepted such a low amount ($3,500) to settle <u>both</u> [his] claim in the slip-and-fall incident and [his] claim here." Declaration of Chris Terry, dated April 25, 2024, ¶ 12. Plaintiff, in effect, received "nuisance value" money to settle his slip-and-fall-incident claim and nothing of value to waive his Section 1983 claim. *Phelps v. Geico Indemnity Co.*, No. 6:12-CV-1585, 2015 WL 1447024, at *6 (N.D.N.Y. Mar. 30, 2015) ($5,000). *Cf. Laniok*, 935 F.3d at 1368-69 (plaintiff's contention that he did not receive anything of value in exchange for waiving his right to participate in defendant's pension plan supported plaintiff's position that the waiver was not knowing and voluntary); *Drees*, 2009 WL 875530, at *5, *6 (plaintiff's affidavit stating that she received no additional benefits for signing the releases supported her position that they were not knowing and voluntary).

### 7. Whether Plaintiff Had a Fair Opportunity to Consult an Attorney

The seventh factor -- whether an employer encourages or discourages an employee to consult an attorney, and whether the employee had a fair opportunity to do so -- also heavily favors plaintiff. While plaintiff had an attorney, Mr. Waller, there is at least a genuine issue of material fact as to whether or not plaintiff had a fair opportunity to consult with Mr. Waller about the effects of the "General Release," given that plaintiff recalls that he and Mr. Waller, at most, spoke about the settlement of the slip-and-fall-incident claim once and then only briefly over the phone and does not recall any discussion with Mr. Waller about the "General Release," and also

given that both Mr. Waller and plaintiff agree that they never discussed plaintiff's Section 1983 claim, let alone the effects of the "General Release" on that claim.

### 8.    Other Factors

Even assuming _arguendo_ that the fact that plaintiff and Mr. Waller did not discuss the effects of the "General Release" on his Section 1983 claim does not fit within any of the above _Bormann_ factors, and plaintiff submits that it does fit under the fifth and seventh factors, that fact remains relevant to the "pragmatic" question here, namely, "whether, in the totality of the circumstances, [plaintiff's] waiver of his [Section 1983 claim] can be characterized as 'knowing and voluntary.'" _Laniok_, 935 F.2d at 1368.

### 9.    The Totality of the Circumstances

In sum, viewing the evidence in the light most favorable to plaintiff, as the Court must do on a motion for summary judgment, there is at least a genuine issue of material fact as to whether or not each of the factors in the multi-factor "totality of the circumstances" test favor or disfavor plaintiff, thus precluding a grant of summary judgment to defendants. _Cf. Laniok_, 935 F.3d at 1369 (reversing the district court's grant of summary judgment to defendants, where plaintiff "signed the waiver form without a clear idea of what he was giving up, without receiving anything of value in exchange, without time to reflect or consult an attorney and under threat of losing his job if he refused."); _Drees_, 2009 WL 875530, at *6 (Evidence that plaintiff lacked business experience, had little time to review the releases, lacked any role in deciding on their terms, and received no additional benefits for signing the releases, "suffic[ed] to create material issues of fact regarding the application of the _Bormann_ factors to preclude summary judgment on this issue.") _Okoro_, 2007 WL 980429, at *2 (denying summary judgment to defendants, in part because the parties "dispute various aspects of the circumstances surrounding the signing of the

Release."); *Zveiter v. Brazilian Nat'l. Superintendency of Merchant Marine*, 833 F. Supp. 1089, 1097 (S.D.N.Y. 1993) (although the lack of limiting language in the release and the consideration given in exchange for it weighed in favor of a finding of voluntariness, the other *Bormann* factors weighed against that finding, precluding grant of summary judgment to defendants); *Glugover*, 1993 WL 312269, at *12 ("[B]y her testimony and accompanying evidence, and reasonable inferences to be drawn therefrom, Glugover has created issues of fact concerning the validity of the release which preclude summary judgment in Coca-Cola's favor on this issue."); *Campbell v. Alliance Nat'l, Inc.*, 107 F. Supp.2d 234, 241 (S.D.N.Y. 2000) ("Despite the fact that the majority of the *Bormann* factors favor a finding of a voluntary and knowing waiver, I cannot reject Campbell's claim that she did not understand that she would be waiving her statutory rights to bring suit by signing the Release . . . . Campbell's evidence, consisting of her sworn affirmation as well as deposition testimony, presents a credibility issue which cannot be resolved on summary judgment.").

## II.

### PLAINTIFF'S EDUCATION LEVEL, LITERACY LEVEL AND HIS RELATIONSHIP AND INTERACTIONS WITH COUNSEL WHEN CONSIDERING THE "GENERAL RELEASE" ALL MILITATE AGAINST A FINDING THAT PLAINTIFF'S WAIVER WAS KNOWING AND VOLUNTARY

**A.     Plaintiff's Education Level and Literacy Level Militate Against a Finding That His Waiver Was Knowing and Voluntary**

As shown in Point I.C.1 *supra*, plaintiff's education level and literacy level are relevant in the analysis under the multi-factor "totality of the circumstances" test to determine whether, in executing the "General Release" to settle his slip-and-fall-incident claim, plaintiff knowingly and voluntarily waived his Section 1983 claim, and militate against a finding that the waiver was

knowing and voluntary. The same is true under New York's less stringent contract law principles.

In cases of complete illiteracy on the part of one party to a contract, New York courts have declined to enforce the contract on the grounds of "procedural unconscionability." *See, e.g., D & W Central Station Alarm Co. v. Yep*, 126 Misc.2d 37, 40-42 (Civ. Ct. Queens Cnty. 1984) (holding that five-year term and acceleration clause in contract for rental of burglar alarm equipement were unconscionable as a matter of law, where the defendant, an Asian business woman not born in the United States, spoke English with difficulty and did not read English at all); *Frostfresh Corp. v. Reynoso*, 52 Misc.2d 26, 27-28 (Dist. Ct. Nassau Cnty. 1966), *aff'd in relevant part and rev'd in part on other grounds*, 54 Misc.2d 119 (2d Dept. 1967) (holding that installment contract on refrigerator-freezer written entirely in English, executed by Spanish-speaking buyers, was unconscionable). *Cf. State v. Avco Financial Serv. of N.Y., Inc.*, 50 N.Y.2d 383, 390-91 (1980) (holding that the Attorney General failed to present a case of "procedural unconscionability," for example, by showing "the presence of language difficulties or illiteracy affecting [the contract's] execution or any other reasons that would have made it unlikely that consent was freely and knowingly given.").

While plaintiff is not completely illiterate, he has the reading skills of a sixth grader, hardly sufficient literacy to qualify plaintiff as a sophisticated contracting party. The New York Court of Appeals has made clear that a party's lack of sophistication may be a reason for defining to enforce a contractual provision: "We stress, however, that our holding is limited to the case of a corporate entity that either is financially sophisticated or has the resources to acquire professional guidance. It could well be unreasonable for banks to use contracts of adhesion to impose an exacting 14-day limit on unsophisticated customers, small family businesses, or

individual consumers, including, for example, the elderly, people suffering from certain disabilities, or others for whom the 14-day rule could be too unforgiving." *Clemente Bros. Contracting Corp. v. Hafner-Milazzo*, 23 N.Y.3d 277, 289 (2014).

True, Mr. Waller represented plaintiff in negotiating settlement of his slip-and-fall-incident claim. But Mr. Waller was not present with plaintiff in a cell at Rikers when plaintiff received the settlement papers, executed the "General Release," and mailed the signed papers back to Mr. Waller. Mr. Waller thus could not go through the "General Release" with plaintiff -- line by line -- explaining each and every term to plaintiff.

**B.      Plaintiff's Relationship and Interactions with Counsel Militate Against a Finding That His Waiver Was Knowing and Voluntary**

As shown in Point I.C.3.5.7 and 8 *supra*, plaintiff's relationship and interactions with Mr. Waller in are relevant in the analysis under the multi-factor "totality of the circumstances" test to determine whether, in executing the "General Release" to settle his slip-and-fall-incident claim, plaintiff knowingly and voluntarily waived his Section 1983 claim, and militate against a finding that the waiver was knowing and voluntary. The same is true under New York's less stringent contract of law principles.

To be enforceable under New York law, "a release need only be clear, unambiguous, and knowingly entered into." *Drees*, 2009 WL 875530, at *3 (quotation and citation omitted). Nevertheless, the interpretation of general releases in New York are subject to special rules "based on a realistic recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled." *Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969). "[T]he cases are [thus] many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form." *Id.* (citations omitted).

In other words, context is critical in interpreting general releases under New York law. "Although the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed, its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given." *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959) (citations omitted). "Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Id.*

In *Cahill*, for example, the New York Court of Appeals ruled that a general release executed by William Roberts, owner of Malvina Can Company ("Malvina"), as part of a settlement in a replevin action brought by John Regan, Malvina's former chief executive, to recover certain machinery, did not bar Roberts's executors from later seeking a declaratory judgment that they owned a patent obtained by Regan during the replevin action. *Id.* at 299-300. The New York Court of Appeals reasoned that "[w]hen the release[ ] w[as] executed [by Roberts,] the parties were solely concerned with settling the controversy then being litigated, the ownership of machinery in [Roberts's] possession, a subject having no relation to the invention or the patent. Indeed, not only was no patent in existence, but [Roberts] was not even aware that one had been applied for." *Id.* at 299.

Similarly, in *Chiappone v. North Shore Univ. Hosp.*, 164 A.D.3d 463 (2d Dept. 2018), the Appellate Division, Second Department ruled that a release executed by Joseph and Antonietta Chiappone on June 27, 2014, to settle a medical malpractice claim against North Shore University Hospital ("NSUH") arising from a perforated duodenum suffered by Mr. Chiappone during an endoscopy at NSUH in October 2009 ("Action No. 1") did not bar Ms. Chiappone from later suing NSUH for medical malpractice and wrongful death after Mr. Chiappone was

again admitted to NSUH on July 5, 2013, suffered a seizure and fall while there, sustaining a hip fracture that required surgery, and died of complications from the injuries ("Action No. 2"). *Id.* at 464-65. Although the release executed by the Chiappones to settle Action No. 1 covered all claims of any kind that the Chiappones might have had against NSUH through the date of the release, *id.* at 464, the Appellate Division, Second Department held that NSUH failed to establish, as a matter of law, that the release was intended to preclude Ms. Chiappone "from recovering for claims that allegedly arose during and as a result of the second admission, which were not yet in dispute at the time the release was executed." *Id.* at 465 (underline added). The Appellate Division, Second Department explained that "[w]hile [Ms. Chiappone] may have been aware of the incident giving rise to Action No. 2 when she signed the release, any such awareness is insufficient, itself, to establish that the release was intended to cover any potential claims which were not the subject of Action No. 1." *Id. See also Prestia v. Apfel*, 41 A.D.3d 520, 521 (2d Dept. 2007) ("Contrary to the Supreme Court's determination, under the circumstances of this case, it cannot be said as a matter of law that the stipulation executed by the parties discontinuing the defendants' housing court proceeding and settling all claims 'between the parties to date' was intended to preclude the plaintiff from recovering in this personal injury action which was pending at the time.").

Applying New York's special rules on general releases, the Honorable Jennifer E. Willis, United States Magistrate Judge for the Southern District of New York, recently ruled from the bench that "general releases" signed by Rikers detainees to settle their individual claims against the City did not bar the detainees from participating in a class action challenge to solitary confinement practices at Rikers. Proceedings Before the Honorable Jennifer E. Willis, United States Magistrate Judge, *Dakheem Miller v. City of New York,* No. 21 Civ. 02616 (Sept. 26, 2024)

18

Draft Transcript ("Tr.").[2] In so ruling, Magistrate Judge Williston observed that: New York

disfavors general releases and limits their scope to topics contemplated by the parties at the time

of execution; New York's special rules for evaluating general releases require the Court to

determine whether a release covering an unknown claim was fairly and knowingly made; and in

making this determination, the Court must look to the totality of the circumstances. Tr. at 5-6.

Magistrate Judge Williston also noted that the detainees had signed the releases unaware of the

class action and under circumstances giving rise to an inference that they only intended to settle

the disputes before them. Tr. at 6. As further reasons for concluding that the general releases did

not bar the detainees from participating in the class action, Magistrate Judge Williston cited the

relatively low settlement amounts and the listing of the index numbers on the releases. Tr. at 7.

Turning to this case, at the time that plaintiff executed the "General Release," the parties

were solely concerned with settling plaintiff's slip-and-fall-incident claim. Plaintiff's Section

1983 claim had no relation to that claim. Indeed, plaintiff was not even aware that he had a

viable Section 1983 claim until long after he executed the "General Release." Plaintiff and Mr.

Waller thus did not even discuss the Section 1983 claim. In short, plaintiff's relationship and

interactions with Mr. Waller establish the context in which plaintiff executed the "General

Release" settling his slip-and-fall-incident claim and confirm that in doing so, plaintiff did not

knowingly and voluntarily waive his Section 1983 claim.

---

[2] A copy of the transcript is attached as Exhibit A.

## CONCLUSION

For the reasons set forth above and in plaintiff's earlier memorandum of law, the motion

to dismiss and/or for summary judgment should be denied as to plaintiff's Section 1983 claim.[3]

Dated: Brooklyn, New York
June 20, 2025

Respectfully submitted,

*Robert T. Perry*
ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street, Suite 2C
Brooklyn, New York 11215
(347) 415-5272
*Attorney for Plaintiff*

cc:     Seamus O'Connor (via First Class Mail)
        Assistant Corporation Counsel
        Special Federal Litigation Division
        New York City Department of Law
        100 Church Street
        New York, New York 10007-2601
        *Attorney for Defendants, The City of New York
        and Ryan*

---

[3] The Court ordered that the parties file their suplemental briefing by June 19, 2025. As defendants noted, however, in their June 18, 2025 letter request for more time to file their memorandum of law, June 19, 2025 was a legal holiday, Juneteeth National Independence Day, and therefore under Fed. R. Civ. P. 6(a)(2)(C), the deadline for filing the supplemental briefing was automatically extended to the next day, June 20, 2025.