# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAHKEEM MILLER, on his own
behalf and on behalf of
others similarly
situated, et al.    : Docket #21-cv-02616

      Plaintiffs, :

 -against-     :

CITY OF NEW YORK, et al, : New York, New York
          September 26, 2024
      Defendants.
-------------------------------:

***DRAFT TRANSCRIPT***

PROCEEDINGS BEFORE
THE HONORABLE JENNIFER E. WILLIS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:  KOOB & MAGOOLAGHAN
      BY:  ALEXANDER A. REINERT, ESQ.
      225 Devoe Avenue
      Yonkers, New York 10705

      CUTI HECKER WANG, LLP
      BY:  ERIC J. HECKER, ESQ.
        DANIEL E. MULLKOFF, ESQ.
        ALEXANDER GOLDENBERG, ESQ.
      305 Broadway, Suite 607
      New York, New York 10007

For Defendant:  NYC LAW DEPARTMENT
      BY:  ALAN H. SCHEINER, ESQ.
      100 Church Street
      New York, New York 10007

Transcription Service: Marissa Lewandowski
      Phone:  (631) 813-9335
      E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |


E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

1          THE DEPUTY CLERK:  All rise.  Judge
2   Jennifer E. Willis is now presiding.  Court is now
3   in session.
4          THE COURT:  You may be seated.
5          THE DEPUTY CLERK:  Good afternoon, Your
6   Honor.
7          THE COURT:  Good afternoon.
8          THE DEPUTY CLERK:  We are here for Miller
9   v. City of New York; Docket Number: 21-cv-2616.  We
10  ask the counsels for plaintiff, as well as counsel
11  for defense, please rise and state their names for
12  the record.
13         MR. REINERT:  Good afternoon, Your Honor.
14  Alexander Reinert for the plaintiffs.  With me at
15  counsel table is Eric Hecker, Alexander Goldenberg
16  and Daniel Mullkoff.
17         THE COURT:  Good afternoon.
18         MR. SCHEINER:  Good afternoon, Your Honor.
19  Alan Scheiner from the New York City Law Department
20  for the defendants.
21         THE COURT:  Good afternoon.
22         So, as I had indicated during our hearing
23  on the motion last time, because it is the desire
24  and the intention of the parties collectively that
25  this decision sort of not be used for precedential

1  value, and the parties have already agreed that it
2  is not appealable, any order that I file, I don't
3  have the power to tell different recording services
4  not to take that decision and put it wherever they
5  put it in the usual course.

6         So my thought was that coming here, reading
7  an oral decision into the record, which I would then
8  follow with a very, very abbreviated decision which
9  will merely have the holdings and will reaffirm the
10 fact that both sides have agreed not to appeal, and
11 allow the parties to understand what was clearly a
12 negotiated and intended outcome for the parties that
13 this is the decision.

14        Reading the due reference of names,
15 because, again, just because it's important to me
16 that the parties understand, I've grappled with the
17 issues that I'm basing my decision on -- you know,
18 on law and reason, and so I haven't -- it's, in
19 fact, not being provided, so I will not keep telling
20 you my rulings and my reasonings.

21        Challenge to those who signed in other
22 case, denied; City's challenged incarceration,
23 granted, but he conceded and actually served them.
24 So if there's a period of pretrial detainees, then
25 started serving a sentence, then stopped serving

1    that sentence, it would only be the period of time

2    where they were serving a sentence of incarceration

3    that they would be excluded from the calculation of

4    the class for that time period.

5            And third, class counsel's challenge to

6    include six individual claimants who had been placed

7    in the contagious disease unit is granted in part

8    and denied in part, and I'll specify which

9    potential -- which claimants are covered when we get

10   there.

11           So first, I will explain my decision with

12   respect to the general releases. And I want to

13   acknowledge upfront that there are some courts that

14   have enforced releases with the same or similar

15   language as the releases in this case, but there are

16   also courts that have declined to enforce identical

17   releases. New York State has long disfavored

18   general releases and limits their scope to topics

19   contemplated by the parties at the time of executing

20   the releases; see Mangini.

21           New York has, quote, special rules for

22   evaluating such general releases. Those special

23   rules require the Court to determine whether a

24   release covering unknown claims was, quote, fairly

25   and knowingly made; that's from Fleming.

1       In making this determination, the Court

2   must employ a totality of the circumstances

3   standard; see Gallo.

4       Plaintiffs allege that they were

5   indefinitely placed in near-solitary confinement

6   without due process, often for many months, and

7   often with no idea how long this near-solitary

8   confinement would last.  Plaintiffs would have had

9   no way of knowing at the time whether this treatment

10  violated any procedures, as alleged in a complaint,

11  and they would not have known that their treatment

12  gave rise to a claim.

13      Later, some plaintiffs signed releases

14  without any -- potential plaintiffs signed releases

15  without any awareness of the pending potential class

16  action, and under circumstances giving rise to an

17  inference that they only intended to settle the

18  disputes before them.  The plaintiffs could not have

19  intended for their releases to cover the claims in

20  this class action.  And under these circumstances, I

21  find that plaintiffs did not fully and fairly waive

22  their rights to the claims in this class action

23  complaint.

24      I find that this case is analogous to

25  Chaponi or Chiapon, and the issues at stake in this

1    class action were, quote, not yet in dispute, end

2    quote, at the time the general releases were

3    executed.

4          Moreover, in this case there are additional

5    reasons to conclude that the plaintiffs, as well as

6    the City, did not intend to agree upon general

7    releases that would prohibit claims for unknown

8    injuries.  These reasons include, one, the

9    relatively low amounts that those cases were settled

10    for; two, the City's own course of conduct; and

11    three, the listing of the index numbers of those

12    cases on the releases in the settled cases.

13          Therefore, as in Mangini, it would be

14    inequitable to allow the releases to serve as a bar

15    to this claim.  Therefore, the City's challenge to

16    exclude the signatories of general releases is

17    denied.

18          Additionally, because the Court is only

19    declining to enforce the interpretation of the

20    releases proposed by the City and is not

21    invalidating the underlying settlement agreements,

22    there shall be no setoff of amounts previously

23    received in those settlements, and the cases settled

24    by those agreements are not to be reopened.

25          We'll turn next to the definition of

1    pretrial detainee.

2         The Court is left with the unavoidable

3    conclusion that the parties intended to exclude

4    those that were not exclusively pretrial detainees

5    when they negotiated their proposed settlement.  The

6    City would have unique defenses, both with respect

7    to liability and to damages for those already

8    convicted and serving a sentence of incarceration.

9    Even if people serving sentences could theoretically

10    be included in the same class as pretrial detainees,

11    there are strong reasons why the language in the

12    settlement agreement would reasonably exclude those

13    serving a sentence of incarceration.

14         Defendant is correct that in the cases

15    cited by plaintiff, the courts interpreted the

16    terms, quote, and/or in context and analyzed those

17    agreements as a whole; see Kaufman, ^Fraternity, and

18    Fairfield.

19         It is well settled that New York law

20    prefers an interpretation of contract that gives

21    words and phrases full meaning and effect over one

22    that renders them meaningless; see Galley and

23    Nautilus.

24         Plaintiffs' proposed interpretation would

25    render the phrase "serving a sentence of

1     incarceration" superfluous, which is a result to be
2     avoided under New York contract law; C. Picarelli.
3           Moreover, the Court finds that the Qhin,
4     Q-H-I-N, data to be sufficient to demonstrate which
5     potential class members are to be excluded.
6           For this reason, the City's challenge to
7     exclude those already serving a sentence of
8     incarceration is granted.  But as I said previously,
9     as the City conceded in its brief, the exclusion is
10    only for the portion of the claim during which those
11    claimants were actually serving a sentence of
12    incarceration.
13          Lastly, I turn to plaintiffs' contagious
14    disease unit challenges.
15          First, the Court determines that the City
16    did have fair reasons to quarantine every single
17    person who came into DOC's custody at the beginning
18    of COVID.  Nevertheless, that valid concern may not
19    have justified placing every individual into
20    near-solitary confinement conditions.  Whether the
21    City violated due process by placing every
22    individual coming off the street into solitary-like
23    confinement is not before the Court.
24          The only question before this Court is
25    contractual, and here, the parties agreed that

1    challenges shall be deemed successful unless the

2    medical records demonstrate that the person was

3    housed in West Facility because they had been

4    diagnosed with or were suspected of having

5    contracted a contagious disease.  If every newly

6    admitted individual were deemed to be suspected of

7    having contracted a contagious disease by virtue of

8    the fact that they were a newly admitted individual,

9    there would be nothing for the medical records to

10   demonstrate, and the reference to medical records in

11   the contract would be superfluous; see Picarelli.

12   Therefore, notations to COVID clearance, without

13   more, fail to demonstrate that the person was

14   suspected of having contracted a contagious disease.

15          Turning to the specific challenges.

16          First, as to Michael Caraballo, the City

17   emphasizes that Mr. Caraballo's medical records

18   indicate that he was in CDU for COVID clearance.

19   However, that notation was made on March 8th, and

20   Mr. Caraballo tested negative on March 5th, and

21   according to the City's submission, again on March

22   15th.  The comment that he was there for COVID

23   clearance paired with the negative tests is

24   insufficient to demonstrate that he was suspected of

25   having a contagious disease.  So the challenge is

1    granted and Mr. Carabello will be included in the

2    class.

3           Next, as to Michael Masturzi, the records

4    for Mr. Masturzi indicate an opioid OD, small, acute

5    left occipital infarct.  While individuals can

6    certainly have COVID along with other medical

7    problems, the records here indicate that he was

8    placed in CDU due to the opioid overdose and the

9    left occipital infarct, and not for having

10   contracted or being suspected of having a contagious

11   disease.  Again, blanket COVID clearances are

12   insufficient.  This challenge is granted and

13   Mr. Masturzi will be included in the class.

14          Next, as to Raheem Wilson, Mr. Wilson's

15   records from September 2021 state:  History of

16   present illness.  Patient with asthma, never vaxed.

17   Last COVID, 6/21, negative.  Known communicable

18   disease requiring contact or airborne isolation

19   influenza-like illness.  There is clear indication

20   in the medical records for Mr. Wilson that he was

21   suspected of having contracted a contagious disease.

22   So this challenge is denied, and Mr. Wilson is not

23   in the class.

24          Next as to Joshua Morsiglio, per the

25   medical records, Mr. Morsiglio tested negative for

1     COVID on May 6th and then refused to test on May

2     19th. He was then placed in CDU. The City cannot

3     punish inmates who refuse to test by placing them in

4     near-solitary confinement conditions. Mr. Morsiglio

5     had tested negative and then refused further tests.

6     Notably, there is no indication of symptoms or close

7     contact with infected people in his medical records,

8     and therefore no individualized suspicion that he

9     had contracted a contagious disease. This challenge

10    is granted, and Mr. Morsiglio will be included in

11    the class.

12         Next, as to Rahim Ula, Mr. Ula's records

13    include a notation, quote, for COVID clearance, and

14    his records indicate that he was admitted for wound

15    care. Thus, the medical records do not demonstrate

16    that he was suspected of having contracted a

17    contagious disease. As previously indicated, COVID

18    clearance is insufficient, and here, there is a

19    particularized reason that he was placed there,

20    which is not on suspicion of contracting a

21    contagious disease. So this challenge is granted,

22    and Mr. Ula will be included in the class.

23         Last, as to Kadim Anderson, as above, as

24    previously mentioned with Mr. Ula, Mr. Anderson's

25    records indicate that he refused intake. Nothing in

1   the records indicate that he was under any suspicion
2   of having contracted a contagious disease.  This
3   challenge is granted, and Mr. Anderson will be
4   included in the class.
5          Finally, I'd like to finish by
6   complimenting the excellent work by the attorneys on
7   both sides.  These were clearly complex and weighty
8   issues, and the briefs were very well done and
9   submitted on what was a very expedited timeline, and
10  I appreciate that.
11         With that, and as I indicated, I will be
12  following this up as soon as I get back upstairs
13  with a very short order, which should close out a
14  number of the open gavels.  And in brief, we'll
15  reiterate the rulings that I have made.
16         With that, is there anything further that
17  we need to discuss on behalf of plaintiff?
18         MR. REINERT:  Thank you, Your Honor.
19  There's a couple of clarifications I'd like to just
20  get out and make sure we have them on the record.
21         Just first, to be clear, when the Court
22  says this person is not included in the class,
23  technically, I think what the Court needs to say is
24  that CDU time will not be included in their
25  compensation.  Some of these individuals serve time

1  at other points where no one is arguing that they're

2  not class members.  I just want to make sure that's

3  clear on the record.

4          The other thing is, there was one pretrial

5  challenge that we noted in our paper, was submitted

6  late by the City, and there was briefing on both

7  sides on that issue; it's Mr. Foote, Mr. Enrique

8  Foote.  So I'm not -- you know, I don't know if the

9  Court has considered that, and if not, it's

10  obviously fine for the Court to make a determination

11  as to that.  But we, of course, hear the Court's

12  ruling on the argument as to the pretrial

13  challenges.  But as to Mr. Foote, we had made a

14  specific argument that it was late under the

15  stipulation, which, of course, is separate from the

16  question of whether or not he was a pretrial

17  detainee or not when he served the time in question.

18          So that's just in terms of making sure that

19  we have all of the -- whatever -- I's dotted and T's

20  crossed.

21          And then, I just want to look forward for a

22  moment, Your Honor.

23          As we had indicated in one of our letters

24  to the Court, we did not present every class member

25  challenge to the Court because we assumed that the

1    Court's resolution of the pending class member
2    challenges would give enough guidance to us as
3    counsel that we can move forward and figure them
4    out.  And I anticipate that this is sufficient, as I
5    understand the Court's ruling.
6          Of course, it is possible that -- and I'm
7    ready to send to Mr. Scheiner our list of the
8    challenges that remain, and how we think they should
9    be resolved given the Court's resolution of the CDU
10   issues.  There's a timeframe for Mr. Scheiner to
11   respond to that, and I'm going to be giving him all
12   of the medical records and the specific references
13   to that.  Of course, I assume that we will be able
14   to work it out; it's possible that we won't, in
15   which case I think we would have to be back before
16   the Court.
17         And I just appreciate the Court's careful
18   attention to this case and -- and detailed attention
19   to the case.  As the Court is aware, once we get all
20   this wrapped up, we can go to Judge Castel.  So I am
21   hopeful that we won't have to come back to the
22   Court.  But I'm just anticipating if, in case we do,
23   we will -- we hope that we can get it resolved as
24   quickly as possible.
25         The last issue of timing is with respect to

1    the pretrial challenges by the City that have been

2    granted.  The one thing we will need from the City,

3    as a matter of timing -- and I would just appreciate

4    Mr. Scheiner speaking to this -- is the City's

5    specifics as to which days the City contends are

6    covered by the pretrial challenges.  Again, I don't

7    think this should be a matter of dispute, but we

8    don't have that yet from the City.  Although we know

9    what we think they are, we just haven't -- we don't

10    have the specifics from the City.

11         So thank you.

12         THE COURT:  And before you sit down, sir,

13    there was a gentleman in the back who was raising

14    his hand.

15         MR. REINERT:  Mr. Vasquez is a class

16    member, so it's to the --

17         THE COURT:  I don't know.  Just one moment.

18    Perhaps you want to --

19         MR. REINERT:  You want me to --

20         THE COURT:  Well -- well, right, we

21    haven't -- well --

22         MR. REINERT:  I'll go have a -- I can go

23    have a conversation, or -- I can go have a

24    conversation with Mr. Vasquez.

25         I can put, on the record, Mr. Vasquez's

1    challenges is one of the ones that we were waiting
2    for the Court's decision to guide us as to
3    whether --
4         THE COURT:  So, sir, and they can have
5    further conversation with you about this to explain,
6    but there were a couple of categories of challenges
7    that were being made.  And I think the idea between
8    the parties was that how I would rule on some of
9    those categories would then allow them to talk
10   amongst themselves and say, well, this person,
11   clearly, based on the logic of what I said, is in or
12   is not, or this should count or this shouldn't.  So
13   instead of bringing every single issue before me,
14   the idea was, you know, to get some -- right, to get
15   some guidance.
16        So to the extent that you are someone that
17   there be a particularized challenge or not about --
18   it sounds like the parties now have some guidance
19   about what category you should fall into.  And they
20   will then talk amongst themselves to see if they're
21   in agreement about that.  If they are, that's fine;
22   if they're not, as plaintiffs' counsel has
23   indicated, certainly they or the City is free to
24   come back and say, here's some additional, you know,
25   issues that we have in dispute.  They may not need

1    to do that; they may be able to resolve remaining
2    issues between the lawyers, but -- so to the extent
3    that your particular challenge was -- was not heard
4    today, sir, hopefully the rulings will give some
5    guidance as to -- as to the fate of you as a
6    potential claimant in the case.
7              MR. SCHEINER:  Your Honor, if I may?
8              Yeah, defendants object to the plaintiff
9    essentially requesting reconsideration of the
10   Court's order by pointing to an argument that they
11   made in the papers that they thought that you didn't
12   address.
13             Our understanding is that the Court's
14   decision is final.  We didn't come here prepared for
15   a re-argument of anything, and we think that's
16   procedurally inappropriate to attempt.
17             THE COURT:  And as to that, you're speaking
18   with respect to Mr. Foote; is that correct, sir?
19             MR. SCHEINER:  The assertion that the
20   challenge was late, yes.
21             THE COURT:  Right.  So I -- with respect to
22   the pretrial detention, I am making a blanket ruling
23   there that folks who were serving a sentence for the
24   period of time that they are serving the sentence --
25   and you were certainly right to correct me on the --

1    I said it about the CDU folks, but I am not speaking

2    as to broad class membership or not.  And to the

3    extent that I did, that was not my intention.  I am

4    talking about the period of time that somebody was

5    serving a sentence, the period of time that folks

6    were in CDU.

7         And so Mr. Foote is included in that

8    blanket ruling with respect to if he was serving a

9    concurrent sentence.  So pretrial, but also serving

10    a sentence.

11         MR. SCHEINER:  And Mr. Reinert also

12    mentioned something about what happens next and the

13    timing of that.  I think that is also beyond the

14    scope of what the Court put on the agenda.  We'll

15    work as diligently as we can.  I can't speak for

16    what other people -- other people's schedules, what

17    they're going to be doing.  And I'm not even sure

18    why Mr. Reinert thinks there's any ambiguity about

19    the issue he raised.

20         So I don't think that it's appropriate for

21    the Court to try to set a schedule for any of that

22    today.  If the plaintiffs -- obviously they're not

23    shy about raising complaints if they want to.

24         THE COURT:  And plaintiffs' counsel will

25    obviously correct me if I'm wrong.  I did not hear

1    him saying he wanted to set a schedule.  I just

2    thought, and he can obviously chime in if I -- if

3    I've gotten this wrong, that he was just sort of

4    alerting me to the fact that it is possible that

5    there might be some more work for me to do on the

6    case in the event that now -- that you sort of have

7    your marching orders in terms of the rulings I have

8    made, I did not hear him as asking to set a

9    schedule, and I -- and I hadn't intended to do so.

10         My thought from what I'm hearing is that

11   you and -- plaintiffs' counsel and you, sir, will

12   sort of get together, figure out what periods of

13   time are in, out, who's in, who's out, and to the

14   extent that there is something then that I need to

15   rule on, that one or the other side would bring that

16   back to me.

17         MR. SCHEINER:  Yes, Your Honor.

18         And in case this is an oversight by the

19   plaintiffs -- they would never make an oversight,

20   Your Honor.  I just want to flag for the Court,

21   medical information was discussed about individuals.

22   I don't know if that's -- plaintiffs intend that to

23   be public or not, but I just wanted to flag that as

24   something that may require redaction.  I think

25   that's up to the plaintiffs.

 1        Thank you, Your Honor.

 2        MR. REINERT: Yeah, I think that's right.

 3 We might have to redact some specific assets -- ask

 4 that certain aspects of the transcript be redacted.

 5        I do want to just get back to Mr. Foote,

 6 just so I understand the Court's -- the Court's

 7 ruling.

 8        I wasn't -- I did not mean to ask for a

 9 reconsideration or that argument to be reconsidered.

10 I was just ensuring that, if that's the Court's

11 ruling, obviously we have agreed that it be final.

12 So if the Court's ruling was that the challenge to

13 Mr. Foote's -- the pretrial challenge to Mr. Foote

14 is encompassed within the Court's resolution of the

15 pretrial challenge, and therefore that our objection

16 that the challenge was untimely has been rejected,

17 then I just want to make sure that that's clear.

18 And I'm not asking for reconsideration of anything.

19        THE COURT: In terms of the transcript, I

20 do think that -- I'm going to interpret what you've

21 said as being that, yes, you are requesting those

22 portions be redacted. And so I think the mechanism

23 by which that happens is someone orders the

24 transcript, and then you review it; you say what

25 portion should be redacted. And I agree that

1    obviously medical information was discussed, and

2    that is information that is appropriately redacted

3    from the public record.  And so I am -- I hear your

4    request for redaction and I grant that.  And to

5    effectuate that happening, again, someone needs to

6    order a copy of the transcript so that the proposed

7    redactions can be sent to the transcription folks.

8            Is there anything else that we need to

9    discuss?

10           And I am correct, right, sir, that you were

11   not trying to set a schedule?

12           MR. REINERT:  Oh no, I was just asking if

13   Mr. Scheiner was willing to tell us when he might be

14   willing -- might be able to give us anything.

15           In any event -- but I don't mean to be, in

16   any way, pushing.  I just want to -- I just want to

17   know with respect to Mr. Foote, has the challenge

18   been granted notwithstanding our plan?

19           Okay.

20           THE COURT:  Yes.

21           MR. REINERT:  Thank you, Your Honor.

22           THE COURT:  That is correct.

23           MR. SCHEINER:  Your Honor, just a

24   clarification about the transcript.

25           Occasionally -- I could be wrong -- when a

1  transcript is prepared, you know, for review, the
2  court reporter will essentially post it on the
3  docket, sometimes publicly, sometimes saying you can
4  order it if you want it.  And I think based on what
5  we discussed at the beginning, that it would be best
6  if the transcript was not posted on the docket in
7  that way, but made available for redactions in case
8  somebody were to order it, which is within their,
9  you know, power.
10      THE COURT:  I am not sure how -- what you
11  were suggesting essentially would be saying that we
12  order a copy but place it under seal.  And I don't
13  know that, in keeping with the ruling that Judge
14  Castel had previously made about -- I don't know
15  that the sort of requirements for something to be
16  placed under seal would be met, and I'm not -- you
17  sort of can't do proposed redactions without having
18  the transcript to kind of know what the sections are
19  to redact.
20      So I understand your concern that sort of
21  once it's ordered, then it's there.  And to the
22  extent that we're trying to minimize the public
23  footprint of the ruling, I'm not -- unless counsel
24  has a suggestion, not sure how we could then
25  effectuate that.

1             MR. REINERT: Well, I'll make two points.

2               With respect to redactions, it's

3   straightforward. It's what we did with the last

4   transcript.

5               With respect to the ruling, as far as we've

6   agreed that it doesn't have precedential effect;

7   we've agreed that we're not going to submit it to

8   court reporting service. We didn't agree that this

9   was going to be a secret proceeding.

10            THE COURT: Which is why I'm not putting it

11   under seal.

12            MR. REINERT: It's a public proceeding, and

13   the Court's reasoning is public. So I don't know

14   what the basis would be for sealing the entire

15   transcript as opposed to sealing the portions of the

16   transcript that refer to individual's medical

17   records.

18            MR. SCHEINER: Your Honor, defendants

19   aren't requesting sealing. It's just that, if

20   there's a choice about whether the transcript be

21   posted for anyone to download without paying, we're

22   requesting that that not be the case. Obviously, if

23   somebody wants to get the transcript and pay for it,

24   they have that right.

25            THE COURT: Right, so I don't -- I mean, I

```
 1    think the mechanism -- so in order for the recording
 2    to be reduced to a transcript, which can then be
 3    reviewed and then marked for proposed redactions,
 4    either plaintiffs' counsel or you, sir, or I suppose
 5    the Court would have to order it.  That puts it on
 6    the docket with a hyperlink.  But that is still --
 7    and it's my understanding that someone other than
 8    counsel and the Court to access that, they click on
 9    it and have to pay.
10          So I don't -- this isn't a -- this isn't
11    a -- we're not, you know, publicly putting a PDF out
12    there.  It would be available in the way that any
13    transcript of an open proceeding is available.
14          MR. SCHEINER:  That's what I wanted to
15    check.  In other words, somebody else will have to
16    pay for it.  That's the order.
17          THE COURT:  That is absolutely my
18    understanding.  I don't know why there would be any
19    difference with respect to that.
20          So with that, is there anything more?
21          MR. REINERT:  No, thank you, Your Honor.
22          THE COURT:  In that case -- in that case,
23    we'll be adjourned.
24
25
```

```
 1                    C E R T I F I C A T E
 2         I, Marissa Lewandowski, certify that the
 3    foregoing transcript of proceedings in the case of
 4    MILLER, et al v. CITY OF NEW YORK, et al, Docket
 5    #1:21-cv-02616-PKC-JW, was
 6    prepared using digital transcription software and is
 7    a true and accurate record of the proceedings.
 8
 9
10    Signature    Marissa Lewandowski
11                 Marissa Lewandowski
12
13    Date:        October 16, 2024
14
15
16
17
18
19
20
21
22
23
24
25
```